**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

HENRY A., by his next friend M.J., et al.,          )
                                                    )
                    Plaintiffs,                     )
                                                    )          2:10-cv-00528-RCJ-PAL
          v.                                        )
                                                    )
MICHAEL WILLDEN, Director of the Nevada )          **ORDER**
Department of Health and Human Services, )
et al.                                              )
                                                    )
                    Defendants.                     )
                                                    )
_____ )

     Currently before the Court is a Motion to Dismiss, or, in the alternative, Motion for a More Definite Statement filed by Defendants Clark County, Virginia Valentine, and Tom Morton (collectively referred to herein as the "Clark County Defendants") on May 7, 2010. Also before the Court is a Motion to Dismiss, or, in the alternative, Motion for More Definite Statement filed by Defendants Michael Willden and Diane Comeaux (collectively referred to herein as the "State Defendants") on May 10, 2010. Plaintiffs filed a Consolidated Opposition (#36) on May 27, 2010. The State Defendants filed a Reply (#39) on June 7, 2010, and the Clark County Defendants filed a Reply (#41) on June 9, 2010.

     The Court heard oral argument on the motions on October 19, 2010.

**BACKGROUND**

     The following is a recitation of facts taken from the Complaint (#1) filed on April 13, 2010.

     Plaintiffs are thirteen children who are in or have been in the legal custody of the State of Nevada and/or Clark County and placed in foster care. Plaintiffs seek redress for harms

suffered while in the foster care system, and have filed individual claims for damages, declaratory and injunctive relief. Plaintiffs have also filed class action claims for declaratory and injunctive relief.

According to the complaint, Plaintiffs were removed from the care of their parents and placed in Defendants' custody for the explicit purpose of keeping them safe from harm and ensuring their well-being. Despite this purpose, Plaintiffs state that Defendants' child welfare system routinely fails in its legal obligations, duties and responsibilities to the Plaintiffs. Although Defendants are long aware of these failures, Plaintiffs assert that in many instances Defendants' proposed solutions to the problems are ineffective. Moreover, Plaintiffs state that Defendants' policies and customs (i) fail to comply with federal and state laws, (ii) depart substantially from professional judgment, standards and practices, and (iii) reflect a deliberate indifference to the health and safety of the children Defendants are obligated to protect. As a result of Defendants' failures, Plaintiffs state that they have suffered numerous injuries including: severe physical abuse, lack of necessary medical treatment, and multiple placement disruptions.

According to Plaintiffs, Nevada law grants explicit responsibility and authority to the State Defendants to develop and promulgate child welfare policies. However, Plaintiffs assert that the State Defendants have abdicated this responsibility in large respect. As a result, Plaintiffs state that the Clark County Defendants have created many of their own child welfare policies. According to Plaintiffs, this mixture of state and county policies makes it virtually impossible to determine what policies actually apply and confounds the ability of even the most well-intentioned staff to determine what their responsibilities are to the children on their caseload.

The complaint asserts that Nevada's foster care system is financed through a mixture of federal, state, and county funds. According to Plaintiffs, the State provides funding to Clark County for operation of its foster care program, while Clark County is responsible for providing funding for child protective services within the county. Plaintiffs assert that the State also receives millions of dollars of federal funds for its child welfare system and allocates a portion

2

of those funds to Clark County.  Federal funds are the single greatest support of Nevada's child welfare system, ranging each year from 53% to 55% of all state spending on child welfare.

According to the complaint, to become eligible for federal funding, Nevada agreed to administer its foster care program in accordance with federal statutes, regulations, and policies promulgated by the U.S. Department of Health and Human Services.  The U.S. Department of Heath and Human Services conducts periodic reviews to assess whether Nevada is in compliance with those federal mandates.  Federal reviews were conducted in both 2004 and 2009.  Plaintiffs state that the 2004 review of Nevada's foster care program found that Nevada was not in substantial compliance with any of the seven child welfare outcomes designed to ensure children's safety, permanency and well being.  Plaintiffs state that the State's performance continued to fall below national standards in the 2009 Federal Review.  In 2009, Nevada was only in substantial compliance with one of the seven child welfare outcomes designed to ensure children's safety, permanency and well being.

Plaintiffs state that since 2003, more than ten studies and reports have documented the Defendants' failure to protect the health, safety and well being of child abuse victims and children in foster care.  According to Plaintiffs, Defendants commissioned many of these reports.  In addition, Defendants have conducted multiple case reviews that further document these failures.  Based on these reports and reviews, Plaintiffs assert that Defendants have had full knowledge of the system's deficiencies and have failed to remedy the problems.  Specifically, Plaintiffs state that Defendants failed (i) to adequately train and supervise caseworkers, (ii) to meet the needs of children under their care, (iii) to ensure that caseworkers conduct legally required visits with foster children, and (iv) to take reasonable and legally mandated steps to protect children from harm.  Because of these failures, Plaintiffs allege that Defendants are victimizing foster children rather than discharging their duty to provide for their safety and well-being.  Plaintiffs state that they have been physically, emotionally and psychologically harmed by the deficiencies in Defendants' policies, customs and omissions.

Plaintiffs filed a complaint in this action seeking compensatory and punitive damages for the past harms that Plaintiffs suffered while in the custody of Defendants.  The action also seeks declaratory and injunctive relief to stop continuing violations of Plaintiffs' legal rights and to prevent Defendants, through their policies, customs and omissions, from continuing to harm the children they have a responsibility to protect.  In addition, the lawsuit seeks declaratory and injunctive relief on behalf of certain specified classes of children in the Clark County foster care system based on Defendants' alleged failure to fulfill mandatory obligations.

There are five named Defendants in this action: (1) Michael Willden ("Willden"), Director of the Nevada Department of Health and Human Services; (2) Diane Comeaux ("Comeaux"), Administrator of the Nevada Division of Child and Family Services; (3) Virginia Valentine ("Valentine"), Clark County Manager; (4) Tom Morton ("Morton"), Director of Clark County Department of Family Services; and (5) Clark County. Plaintiffs have filed the following individual claims against the Defendants: (1) Section 1983 - Duty to Protect; (2) Section 1983 - State Created Danger; (3) Section 1983 - Federal Adoption Assistance Act and Child Welfare Act, Federal Child Abuse Prevention and Treatment and Adoption Reform; (4) Substantive Due Process under the Nevada Constitution; (5) Negligence; (6) Violation of the Supremacy Clause - NRS 424.090; and (7) Violation of the Supremacy Clause - NRS 432.0177.  Plaintiffs have also filed several class claims against Defendants.  These include: (1) Section 1983 - Federal Adoption Assistance Act and Child Welfare Act, Federal Child Abuse Prevention and Treatment and Adoption Reform; (2) Section 1983 - Child Abuse Prevention and Treatment Act, Guardian Ad Litem; (3) Section 1983 - Child Abuse Prevention and Treatment Act, Early Intervention Services; (4) Section 1983 - Duty to Protect; and (5) Substantive Due Process under the Nevada Constitution.

Defendants move to dismiss the claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that they are entitled to immunity and the causes of action fail to state claims for relief upon which relief may be granted.

///

**DISCUSSION**

**I. Immunity**

The Clark County Defendants move the Court to dismiss the claims asserted against them on the basis that they are immune from suit in both their official and individual capacities. (Mot. to Dismiss (#20) at pp. 7-13). The Clark County Defendants state that all "of the acts allegedly taken by Ms. Valentine and Mr. Morton are discretionary acts for which Ms. Valentine and Mr. Morton as individuals are absolutely immune from suit." Id. at 9. In addition, the Clark County Defendants state that they are entitled to qualified immunity for the causes of action asserted against them because they "both were acting in the course and scope of their job responsibilities," and Plaintiffs' claims do not state that "clearly established rights have been violated." Id. at 11. Finally, the Clark County Defendants state that they are entitled to immunity as to the state law causes of action because the alleged unlawful acts asserted are discretionary in nature. Id. at 12.

The State Defendants also argue that they are entitled to immunity as to the claims asserted against them in Plaintiffs' complaint. (Mot. to Dismiss (#21) at 4). According to the State Defendants, they are entitled to immunity because Plaintiffs have failed to sufficiently plead the substantive due process claims against them. Id. The State Defendants also move to dismiss the claims asserted against them for failure to state a claim upon which relief can be granted.

In response, Plaintiffs argue that the Defendants are not entitled to immunity on any of the causes of action asserted against them. (Consolidated Opp'n (#36) at 22). According to Plaintiffs, it is well established that local government officials, such as Defendants, can be sued in their official capacities under section 1983. Id. at 22. In addition, Plaintiffs state that the Defendants have cited no authority for the proposition that they are entitled to individual absolute immunity for their official actions. Id. at 23. Plaintiffs state that Defendants are not entitled to qualified immunity because they were not engaged in discretionary conduct but in mandatory, ministerial statutory duties. Id. at 25. Moreover, Plaintiffs state that even with

///

5

respect to duties that involve some measure of discretion, Defendants are not entitled to qualified immunity because their conduct violated Plaintiffs' clearly established rights.  Id.

### A. Official Capacity Immunity

Official capacity immunity derives from the doctrine of state sovereign immunity.  See Indep. Living Ctr. v. Maxwell-Jolly, 572 F.3d 644, 660 (9th Cir. 2009).  The doctrine of state sovereign immunity generally prohibits damage suits against states in both state and federal court without their consent.  Id.  The doctrine comes from the Eleventh Amendment, but its essence "derives . . . from the structure of the original Constitution itself."  Id. (quoting Alden v. Maine, 527 U.S. 706, 728, 119 S.Ct. 2240 (1999)).  The Supreme Court has held that state sovereign immunity bars citizens of any state from bringing a lawsuit for damages against a state or state agency.  Id. (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989)).  However, there are several well-established exceptions to this general rule. Id.

One of the exceptions provides that "[a]lthough the Eleventh Amendment expressly prohibits suits against states in both law and equity, a plaintiff may nonetheless maintain a federal action to compel a state official's prospective compliance with the plaintiff's federal rights."  Id. (quoting Ex parte Young, 209 U.S. 123, 156, 28 S.Ct. 441 (1908)).  This exception applies only to prospective relief; it does not permit retroactive injunctive relief.  Id.

In this case, Defendants are not immune from suit in their official capacity for claims seeking prospective injunctive relief.  In the Complaint, Plaintiffs assert that in addition to damages, they are seeking injunctive relief to stop continuing violations of Plaintiffs' legal rights and to prevent Defendants from continuing to harm Plaintiffs through unconstitutional policies and customs.  In their opposition, Plaintiffs assert that they are not seeking monetary damages from the Defendants in their official capacity.  Thus, because Plaintiffs concede that they are only seeking prospective injunctive relief against Defendants in their official capacity, Defendants are not entitled to immunity on that basis.

///

///

6

**B. Individual Capacity Immunity**

Defendants also move the Court to dismiss the claims asserted against them in their individual capacity on the grounds that they are entitled to qualified immunity.

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress."   A plaintiff may pursue a 42 U.S.C. § 1983 claim against a state or government official in his or her individual capacity, seeking to impose personal liability on that official.  Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009).  To succeed on the merits of such a claim, a plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right."  Id. (quoting Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358 (1991)).

On its face, section 1983 does not include any defense of immunity.  Miller v. Gammie, 335 F.3d 889, 895 (9th Cir. 2003).  However, the Supreme Court has recognized two kinds of immunity under a section 1983 claim: "absolute immunity" and "qualified immunity."  See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).

The Clark County Defendants argue that they are entitled to "absolute immunity" on the claims asserted against them.

The United State Supreme Court extends absolute immunity under section 1983 only to a "very limited class of officials, including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, 'whose special functions or constitutional status requires complete protection from suit.'" Hafer, 502 U.S. at 29, 112 S.Ct. 358.  "State executive officials are not entitled to absolute immunity for their official actions."  Id.

The Supreme Court has expressly failed to extend the doctrine of absolute immunity to all government officials.  Miller, 335 F.3d at 897 (citing Antione v. Byers & Anderson, Inc., 508 U.S. 429, 433 n.4, 113 S.Ct. 2167 (1993)).  In analyzing the doctrine of absolute immunity, the Supreme Court stated that: "The presumption is that qualified rather than

absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." Id. (quoting Burns v. Reed, 500 U.S. 478, 486-87, 111 S.Ct. 1934 (1991)).  According to the Ninth Circuit, the burden is on the official claiming absolute immunity "to identify the common-law counterpart to the function that the official asserts is shielded by absolute immunity."  Miller, 335 F.3d at 897.

In this matter, absolute immunity does not apply to the Clark County Defendants. Defendant Valentine is the Clark County Manager and Defendant Morton is the Director of the Clark County Department of Family Services.  These positions are not within the limited class of officials whose special functions or constitutional status require complete protection from suit.  Moreover, the Clark County Defendants assert that absolute immunity applies because immunity "is necessary for them to perform the duties for which they were appointed."  (Mot. to Dismiss (#20) at 10).  However, this argument, by itself, fails to overcome the presumption that qualified, rather than absolute, immunity is sufficient to protect the Clark County Defendants in the exercise of their duties.  As such, based on the allegations in the Complaint and the arguments before the Court, absolute immunity does not apply and the claims for relief are not dismissed under that doctrine.

Both the Clark County Defendants and the State Defendants argue that they are immune from suit based on the doctrine of qualified immunity.

Under "qualified immunity," government officials are not subject to liability for the performance of their discretionary actions unless their conduct violates a clearly established statutory or constitutional right which a reasonable person would have known.  Harlow, 457 U.S. at 818, 102 S.Ct. 2727.

Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case.  al-Kidd v. Ashcroft, 580 F.3d 949, 964 (2009)(citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)).  "For a

constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002)). It is within the court's sound discretion to address these two prongs in any sequence the court sees fit. Id. (citing Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009)).

In this matter, the Clark County Defendants state that they are entitled to qualified immunity because they were acting at all relevant times in the course and scope of their job responsibilities and Plaintiffs have not sufficiently stated that the Clark County Defendants violated Plaintiffs' "clearly established" constitutional rights. The State Defendants argue that they are entitled to qualified immunity because they "could not reasonably know that their conduct in providing oversight to the child welfare system and distributing federal funding to the county agencies would make them liable for any harm that occurred to a child who was in the custody of the County agency." (Mot. to Dismiss (#21) at 10). In response, Plaintiffs argue that Defendants are not entitled to qualified immunity because the federal constitutional rights Plaintiffs were deprived of are clearly established rights under the law.

In this matter, Plaintiffs have asserted the following constitutional claims against Defendants: Duty to Protect, State Created Danger, Federal Adoption Assistance Act and Child Welfare Act, Federal Child Abuse Prevention and Treatment and Adoption Reform, Child Abuse Prevention and Treatment Act, Guardian ad litem, Child Abuse Prevention and Treatment Act, and Early Intervention Services. The Court will address each of these claims individually to determine whether Defendants are entitled to qualified immunity on any of the causes of action.

### 1. Duty to Protect

Plaintiffs' first cause of action alleges that Defendants violated their constitutional right to be "free from harm while involuntarily in government custody and their right to medical care, treatment and services." (Compl. (#1) at 65). Plaintiffs allege that Defendants violated this right by failing (i) to adequately provide medical, dental, and mental health services, (ii) to inform caregivers of essential information, (iii) to conduct legally required visits with foster

children, (iv) to adequately respond to reports of abuse, (v) to ensure adequacy of relative caregiver placements, and (vi) to adequately inspect out of state facilities.  Id.  Plaintiffs have also asserted a class claim under section 1983 to be "free from harm" in their eleventh cause of action.  (Compl. (#1) at 77).  In the class claim, Plaintiffs state that "Defendants' conduct includes the failure to provide early intervention services as required under federal and state law."  Id.

In Clark K. v. Guinn, this court held that "children, who have been involuntarily placed in the custody of [the state] may state a claim for violation of their substantive due process rights based upon their right to freedom from harm under the Fourteenth Amendment of the United States Constitution."  2007 WL 1435428 *15 (D. Nev. 2007)(internal quotations omitted).  In addition, the court noted that "Courts have also held that foster children have a right to required 'professional judgment' while in custody."  Id. (citing Wendy H. v. Philadelphia, 849 F.Supp. 367, 372 (E.D. Pa. 1994)).  This right to freedom from harm, is not, however, "without boundaries."  Id.  Specifically, "under the Fourteenth Amendment, Nevada is required to provide to individuals within state custody their 'basic human needs,' such as 'food, clothing, shelter, medical care, and reasonable safety.'"  Id. (quoting DeShaney, 489 U.S. at 200).

In this matter, the Court finds that Defendants are entitled to qualified immunity on this claim.  Although there is a clearly established right under the duty to protect for the state to provide individuals in state custody with their basic human needs, it is not clearly established that Plaintiffs have a constitutional right to (1) "standardized periodic health screenings and treatments," (2) "medical services for maximum reduction of physical or mental disability," and (3) "monitory of, administration, and use of psychotropic drugs" as alleged in the Complaint. (See Compl. (#1) at 66).  In addition, it is not "clearly established" that the (1) failure to inform caregivers of essential information, (2) failure to conduct legally required visits with foster children, (3) failure to adequately respond to reports of abuse, (4) failure to ensure adequacy

///

///

of relative caregiver placements; and (5) failure to adequately inspect out of state facilities constitutes a violation of a constitutional right.  Because Plaintiffs have not asserted violations of clearly established constitutional rights, Defendants are entitled to immunity on this claim.

### 2. State Created Danger

Plaintiffs' second cause of action asserts that Defendants violated Plaintiffs' constitutional rights because Defendants acted "with deliberate indifference to [a] known or obvious danger in removing Plaintiffs from their homes and placing them in the care of foster parents, including the care of relative caregivers and out of state facilities and homes, who were unfit to care for them and posed an imminent risk of harm to Plaintiffs' safety."  Id. at 67.

In order to state a constitutional claim under the state created danger doctrine, the plaintiff must assert "more than a mere failure to act; it requires the state official to take an affirmative action."  Kennedy v. Ridgefield City, 440 F.3d 1091, 1094 (9th Cir. 2006).  "Second, the plaintiff must prove that the official's act did more than simply expose the plaintiff to a danger that already existed."  Id. (citation omitted).  Finally, the plaintiff must prove that the official acted with deliberate indifference to a known or obvious danger.  See L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996)("The plaintiff must show that the state official participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it.").  The Supreme Court has stated that negligence, whether gross or simple, is insufficient to prove a constitutional violation.  See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662 (1986)("The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").

In Clark K., this court held that the plaintiffs failed to state a claim for relief under the state created danger doctrine on a similar claim against the foster care system because plaintiffs failed to plead each element of the state created danger doctrine.  According to the court, while plaintiffs properly alleged that the defendants acted with deliberate indifference by placing plaintiffs in situations defendants knew or should have known posed an imminent risk, plaintiffs failed to allege that the official's act did more than simply expose the plaintiff to

a danger that already existed.  2007 WL 1435428 *16.  "Plaintiffs have not alleged that Defendants did anything more than place foster children into an already broken system."  Id. "Plaintiffs' Complaint does not state that Defendants created or increased the danger to children, just that they failed to correct it."  Id.

In this matter, based on the holding in Clark K., Plaintiffs' second cause of action fails to state a sufficient claim for relief under the state created danger doctrine.  In this regard, Plaintiffs have failed to allege that Defendants "did anything more than place foster children into an already broken system."  Id.  Moreover, the Complaint does not state that Defendants created or increased the danger to children.  Based on these pleading failures, this claim for relief is dismissed.

In addition, Defendants are entitled to qualified immunity on this claim.  In this regard, Plaintiffs have not provided any factual assertions that the Defendants increased the danger to Plaintiffs.  Because Defendants did not increase the danger to Plaintiffs, they could not have violated Plaintiffs' "clearly established" constitutional rights under the state-created danger doctrine.

### 3.  Adoption Assistance and Child Welfare Act

Plaintiffs' third and eighth causes of action state that Defendants are liable for violating Plaintiffs' statutory rights under the Federal Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, 42 U.S.C. § 671 et seq. (Compl. (#1) at 63 and 69).  The statutory rights the Defendants are alleged to have violated include: (1) the right of each Plaintiff to have his or her health and educational records reviewed, updated, and supplied to foster care providers with whom the child is placed before or at the time of placement, pursuant to 42 U.S.C. §§ 671(a)(16), 675(1), and 675(5)(D); (2) the right of each Plaintiff to have Defendants place him or her with relative foster parents only if those foster parents satisfy Defendants' foster parent licensing standards, pursuant to 42 U.S.C. § 671(a)(10); and (3) the right of each Plaintiff who Defendants place in an out of state placement to visits from caseworkers at least every six months, pursuant to 42 U.S.C. § 675(A)(ii).  Plaintiffs bring this cause of action pursuant to section 1983.

Section 1983 safeguards certain rights conferred by federal statutes.  Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353 (1997).  However, to seek redress under section 1983, Plaintiffs "must assert the violation of a federal right, not merely a violation of federal law."  Id.  Courts traditionally look at three factors to determine whether a particular statutory provision gives rise to a federal right.  Id.  First, Congress must have "intended that the provision in question benefit the plaintiff."  Id.  Second, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence."  Id.  Third, "the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."  Id.

With this framework in mind, the Court must determine whether Plaintiffs have stated a claim that Defendants violated a "clearly established" constitutional right when they engaged in alleged wrongful conduct under the Adoption Assistance and Child Welfare Act.

The Ninth Circuit has not established whether an individual may bring a § 1983 cause of action under the statutory provisions identified by Plaintiffs.  In 1992, the Supreme Court held that one specific provision under the Adoption Assistance Act did not afford a private right of action.  Congress subsequently amended the statute to provide a private right of action under that particular provision, but chose not to amend the remaining statutory provisions.[1]  Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360 (1992).  Many courts find that this is "strong evidence" that the provisions of 42 U.S.C. § 671 do not confer private enforceable rights under section 1983 because Congress specifically examined the numerous state plan elements required under § 671, and determined that only one such element (§ 671(a)(18)), conferred such a right.  See Charlie H. v. Whitman, 83 F.Supp.2d 476, 489 (D.N.J. 2000)).

Plaintiffs assert that under the Federal Adoption Assistance and Child Welfare Act ("AACA") of 1980, as amended by the Adoption and Safe Families Act of 1997, Plaintiffs have the constitutional right to (1) have his or her health and educational records reviewed,

---

[1] The statutory provision amended by Congress was 42 U.S.C. § 671(a)(18), which is not at issue in this litigation.

updated, and supplied to foster care providers with whom the child is placed, (2) have Defendants place him or her with relative foster parents only if those foster parents satisfy Defendants' foster parent licensing standards, and (3) have a visit from a caseworker at least ever six months if she or he is placed in an out of state facility. Each of these alleged statutory, constitutional violations will be reviewed in turn.

### a. 42 U.S.C. §§ 671(a)(16), 675(1) and 675(5)(D)

42 U.S.C. §§ 671(a)(16), 675(1) and 675(5)(D) relate to the creation and dissemination of a case plan for foster children. Section 671(a)(16) requires states "to provide for the development of a case plan (as defined in section 675(1) [42 U.S.C. § 675(1)]) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in section 675(5)(B) [42 U.S.C. § 675(B)] with respect to each such child . . . ." 42 U.S.C. § 675(1) defines the requirements for a "case plan" and section 675(5) defines the requirements for a "case review system."

In Charlie H., the New Jersey district court held that these provisions did not create an enforceable private right of action under § 1983. 83 F.Supp.2d at 489. That court dismissed the plaintiffs' claims brought pursuant to § 671(a)(16) and §§ 675(1) and 675(5)(D) on the ground that they failed to state a constitutional claim for relief. Id. According to the court, the mandates of these provisions were "not so unambiguous so as to confer upon Plaintiffs a right enforceable under § 1983." Id. Moreover, the Court found it persuasive that Congress did not create a private right of action under section 671(a)(16) when it reviewed the statute. Id.

In 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003), the Eleventh Circuit also found that the foregoing statutory provisions did not provide a § 1983 cause of action. In that case, the court held that section 675(5)(D) did not contain rights-creating language. According to that court, the language of the provision had an "aggregate, not individual, focus." Id.

In this matter, the Court finds that Defendants are entitled to qualified immunity on the claims asserted under § 671(a)(16) and §§ 675(1) and 675(5)(D). The Court agrees with the courts in Charlie H. and 31 Foster Children that these provisions do not contain rights-creating

language.  In this regard, section 675(5)(D) and section 675(1) are found in the definitional section of the AACA.  Because these statutes are definitional in nature, "they alone cannot and do not supply a basis for conferring rights enforceable under section 1983."  31 Foster Children, 329 F.3d at 1271.  That leaves section 671(a)(16) as the sole basis for Plaintiffs' constitutional claim that they are entitled to case plans.  That statute requires that a state develop a case plan for each child receiving foster care maintenance payments.  Specifically, the provision provides that in order "for a State to be eligible for payments under this part," it must provide for the development of a case plan.

Here, the Court finds that Plaintiffs have not shown that this is a "clearly established" constitutional right for purposes of qualified immunity.  As noted, a right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  James, 606 F.3d at 652.  In this case, neither the Supreme Court nor the Ninth Circuit have stated that there is a private constitutional "right" under this provision.  Although the Supreme Court does not need to have addressed a right for it be "established," it is clear from the case law that whether this provision of the AACA provides a constitutional right is still being debated, with many courts holding that it does not create such a right.[2]  See Charlie H., 83 F.Supp. 2d at 489.  This Court agrees with the courts the have held that there is no section 1983 private right of action under Section 671(a)(16).  Thus, this claim is dismissed and Defendants are entitled to immunity.

### b.  42 U.S.C. § 671(a)(10)

Plaintiffs also argue that they have a constitutional right of action under 42 U.S.C. § 671(a)(10) and that Defendants are not entitled to qualified immunity under that provision.  Plaintiffs allege that they have the right to have Defendants place them with relative foster parents only if those foster parents satisfy Defendants' foster parent licensing standards.

---

[2] For instance, in Charlie H., the court held that there was not a section 1983 private right of action under section 671(a)(16).  According to that court, "regardless of the detailed nature of the definitions of 'case plan' and 'case review system,' the statutory provisions relied upon by Plaintiffs in support of their alleged right 'to timely written case plans that contain mandate elements and to the implementation and review of these plans' are not so unambiguous so as to confer upon Plaintiffs a right enforceable under section 1983."  Id.

42 U.S.C. § 671(a)(10) provides, in relevant part:

In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which . . . provides for the establishment or designation of a State authority or authorities which shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for such institutions or homes, including standards related to admission policies, safety, sanitation, and protection of civil rights, provides that the standards so established shall be applied by the State to any foster family home or child care institution receiving funds under this part or part B of this subchapter, and provides that a waiver of any such standard may be made only on a case-by-case basis for non-safety standards (as determined by the State) in relative foster family homes for specific children in care.

Despite Plaintiffs' arguments to the contrary, Plaintiffs' alleged constitutional right to be placed with a relative foster parent only if the relative foster parent satisfies state licensing standards is too vague and amorphous under Blessing to be enforced pursuant to section 1983. See Clark K., 2007 WL 1435428 *9; Charlie H., 83 F.Supp.2d at 491. In this regard, this Court has already rejected the argument that this provision creates a private right of action under section 1983. Clark K., 2007 WL 1435428 *9 (citing Yvonne L. v. N.M. Dep't of Human Serv., 959 F.2d 883, 889-90 (10th Cir. 1992)). In Yvonne L., the Tenth Circuit held that the language of section 671(a)(10) did not support a private right of action under section 1983. According to the Tenth Circuit, that provision "only references 'standards of national organizations concerned with standards for such institutions or [foster] homes.'" Id. The court held that this language was vague and amorphous and could not be judicially enforced under section 1983. Id.; see also Baby Neal v. Casey, 821 F.Supp. 320, 326-27 (E.D.Pa. 1993). Courts have also held that "§ 671(a)(10) fails to unambiguously confer upon [p]laintiffs a private right of enforcement under this provision" because "[t]he language of this section does not confer upon [p]laintiffs a 'right' to foster homes or institutions which are in accord with recommended standards of national organizations but clearly states that the state plan must provide for the designation of a state authority or authorities which shall be established and maintain such standards." Baby Neal, 821 F.Supp. at 327; Charlie H., 83 F.Supp.2d at 491. Moreover, courts have held that the "reasonably in accord" language is too vague and ambiguous to maintain a private right of action. See Doe v. Johnson, 1993 WL 50845 * 3(N.D.

16

III. 1993)(dismissing plaintiff's action "to the extent that it seeks private relief for an alleged violation of § 671(a) of the Adoption Assistance and Child Welfare Act" because "the Act places its enforcement mechanism in the hands other than those of private plaintiffs under § 1983").

Moreover, it is persuasive that Congress recently chose to amend 42 U.S.C. § 674 to include a private right of action under § 1983 for a state or other entity's failure to comply with 42 U.S.C. § 671(a)(18), but did not extend a section 1983 cause of action to the other statutory provisions enumerated in 42 U.S.C. § 671(a).   This act by Congress is strong evidence that Congress did not intend section 671(a)(10) to confer rights enforceable pursuant to section 1983.

Based on the foregoing, the Court dismisses this cause of action for failure to state a claim for relief.  In addition, the Court finds that Defendants are entitled to qualified immunity on this claim because there is no "clearly established" constitutional right under 42 U.S.C. § 671(a)(10).

### c.  42 U.S.C. § 675(5)(A)(ii)

Plaintiffs have also asserted that they have a constitutional right to be visited by a caseworker at least every six months when Plaintiffs are placed in an out of state placement. Plaintiffs state that 42 U.S.C. § 675(5)(A)(ii) provides them with a private right of action when that provision is cross-referenced with § 622(b)(8)(A)(ii).

42 U.S.C. § 675(5)(A)(ii) is a definitional provision which provides that the term "case review system" means that "each child has a case plan designed to achieve placement in a safe setting" and if the "child has been placed in foster care outside the State in which the home of the parents of the child is located, requires that periodically, but not less frequently than every 6 months, a caseworker . . . visit such child."  Section 622(b)(8)(A)(ii), which is not referenced in the complaint, states that in order to be eligible for payment under this statute, "a State must have a plan for child welfare services," and such plan must include a "case review system."  42 U.S.C. § 622(b)(8)(A)(ii).

///

In this matter, the Court finds that section 675(5)(A)(ii) does not provide a private constitutional cause of action.   First, because 42 U.S.C. § 675(5)(A)(ii) is a definitional section, it does not, standing alone, confer a right upon Plaintiffs enforceable pursuant to § 1983.   See B.H. v. Johnson, 715 F.Supp. 1387, 1401 (N.D.Ill. 1989)(noting that "it would be strange for Congress to create enforceable rights solely in the definitional section of a statute").   However, even cross referencing this provision with § 622(b)(8)(A)(ii), there is no rights-creating language as required to bring a claim under section 1983.   In this regard, as noted previously, Congress reviewed this statutory provision and did not include a private right of action for this provision.   In addition, the language found in § 622 limits the remedy for failure to comply with its provision to loss of federal funds.   In this regard, the statute states that a State must have a case plan "[i]n order to be eligible for payment" under the statute.

Thus, this statutory provision does not create a constitutional right of action under section 1983, and, therefore, is dismissed.

### 3. Child Abuse Prevention and Treatment Act; Guardian ad litem

Plaintiffs' Ninth Claim for Relief is alleged on behalf of the "Guardian ad Litem Class Representatives" and asserts a § 1983 claim for violation of 42 U.S.C. § 5106a(b)(2)(A)(xiii). (Compl. (#1) at 75).   According to Plaintiffs, they are entitled, under federal law, to representation from a guardian ad litem in all proceedings before the juvenile court.   Plaintiffs assert that Defendants' acts and omissions violated this right.

Defendants argue that they are entitled to qualified immunity under this provision because there is no enforceable constitutional right under the guardian ad litem provision of the Child Abuse Prevention and Treatment Act ("CAPTA").   (Mot. to Dismiss (#21) at 20).   In addition, Defendants argue that this cause of action should be dismissed because the proper parties in the state court system have not been named.   Defendants further argue that the Court should abstain from hearing this claim because it is an issue closely connected to the discretion of state juvenile courts and any determination on this issue would require this Court to interfere in the juvenile courts' administration and workings.

///

18

#### a. Guardian ad litem private right of action

CAPTA requires states to implement procedures for investigation of child abuse and protection of children in order to receive federal funds. Jordan v. City of Philadelphia, 66 F.Supp.2d 638, 648 (E.D. Pa. 1999). 42 U.S.C. § 5106a provides for grants to states for child abuse and neglect prevention and treatment programs. Section 5106a(b)(2)(A)(xiii) provides that to be eligible to receive a grant under the statute, a state shall submit a plan and that plan "shall contain an outline of the activities that the State intends to carry out using amounts received under the grant to achieve the purposes of this subchapter," including "provisions and procedures requiring that in every case involving an abused or neglected child which results in a judicial proceeding, a guardian ad litem . . . shall be appointed to represent the child in the proceedings . . . ."

In Charlie H., the New Jersey district court held that "under the Blessing test, the weight of case law dictates that 42 U.S.C. § 5106a(b)(2) 'does not create a private right of action' under section 1983." 83 F.Supp.2d at 496 (quoting Jordan v. City of Philadelphia, 66 F.Supp.2d 638, 648-49 (E.D.Pa. 1999)(holding that CAPTA clearly does not create a private right of action under 42 U.S.C. § 1983); see also Doe v. District of Columbia, 93 F.3d 861, 868 (D.C. Cir. 1996)(holding that "Section 5106a(b)(2) of CAPTA fails to unambiguously confer an enforceable right upon its beneficiaries, therefore [plaintiff's] claim under § 1983 was appropriately rejected by the district court"); Tony L. v. Childers, 71 F.3d 1182, 1189 (6th Cir. 1995)(holding that "neither CAPTA nor the relevant regulations mandate a particular means of investigation or state what type of actions must be taken to protect abused or neglected children"); A.S. v. Tellus, 22 F.Supp. 2d 1217, 1224 (D. Kan. 1998)(agreeing with "the majority of courts" and holding that the requirements of 42 U.S.C. § 5106a(b)(2) "are too vague to create an enforceable right"); but see Clark K., 2007 WL 1435428 * 13 (finding that plaintiffs section 5106a(b)(2) was sufficient to survive a motion to dismiss).

In Clark K., the Court found that Plaintiffs' claim for violation of 42 U.S.C. § 5106a(b)(2)(A)(xiii) was sufficient to state a claim for relief under the Blessing analysis. According to the court, under the first Blessing prong, "the language clearly indicates that

Plaintiffs (foster children) are the intended beneficiaries of the CAPTA provisions at issue." 2007 WL 1435428 *13.  "Moreover, the statutory language requires that 'in every case' the state must provide a guardian *ad litem*."  Id.  The court found that this language "sets forth clear conditions the state must satisfy to qualify for a federal grant and does so through the use of mandatory and not precatory language." Id.  Further, the court held that the "CAPTA provision at issue is not so vague and amorphous as to be beyond the enforcement power of the Court." Id.  "This Court certainly is competent to determine whether Defendants have made any efforts to comply with this provision." Id.

In this matter, Defendants argue that the foregoing statutory provision does not create a section 1983 private right of action because the language of section 5106a(b)(2) merely requires that a State *submit a plan* which contains an assurance that the State has in effect and is enforcing a state law that includes a provision that a guardian ad litem be appointed in every case involving an abused or neglected child.  (State Defendants' Motion to Dismiss (#21) at 21).  Defendants argue that they have satisfied and complied with the foregoing federal statutory mandate because Nevada has a procedure for the appointment of a guardian ad litem in every case.  Id.  NRS 432B.500 provides that after "a petition is filed that a child is in need of protection pursuant to NRS 432B.490, the court shall appoint a guardian ad litem for the child."  As such, Defendants argue that Nevada has satisfied the requirements of section 5106a(b)(2)(A)(xiii) because it enacted a law requiring the appointment of a guardian ad litem.  Unfortunately, according to the State Defendants, despite this law, "there appears to be an insufficient number of volunteers to serve in that capacity in Clark County."  Id. at 22. Accordingly, and further, the State Juvenile judges do not order such appointment in every case, as is within their judicial discretion.

In this matter, the Court finds that Defendants are entitled to qualified immunity on Defendants' guardian ad litem claim because Plaintiffs have not asserted a violation of a "clearly established" statutory, constitutional right.  In this regard, although the court found in Clark K. that Plaintiffs stated a section 1983 claim for relief under section 5106a(b)(2)(A)(xiii), other courts reviewing that statute have held that there is no constitutional claim under section

5106a(b)(2).  Moreover, the analysis under <u>Blessing</u> is not definite.  Although this court previously found that a complaint sufficiently stated a section 1983 claim under that provision, the court limited its holding, stating that the claim was merely sufficient "for the purposes of surviving Defendants' Motion to Dismiss."  <u>Clark K.</u>, 2007 WL 1435428 *13.  The court did not, as a matter of law, hold that the failure to appoint a guardian ad litem in every case constituted a violation of a federal right.

### b.   Younger Abstention

In addition, abstention under the <u>Younger</u> doctrine is necessary on this claim.  As noted by Defendants, section 5106a(b)(2)(A)(xiii) does not specifically grant each foster child a right to a guardian ad litem.  Rather, it requires that the State, in order to receive federal funds, implement provisions and procedures for the appointment of a guardian ad litem in every case.  Nevada has enacted a law providing for the appointment of a guardian ad litem.  Nevada's law provides that "the court" shall appoint a guardian ad litem in cases where a child is in need of protection.  NRS 432B.500(1).  As such, Nevada law mandates that the state court system be responsible for the appointment of a guardian ad litem.

Because the Nevada statute directs the state court to appoint the guardian ad litem, the Clark County Defendants request that the Court abstain from determining the merits of this claim.  (Mot. to Dismiss (#20) at 17).  In this regard, the Clark County Defendants state that because the state juvenile court is directed to appoint the guardian ad litem under Nevada law, this Court's involvement in that issue would interfere with the discretion of the state juvenile court, as well as the state court's administration and workings.  In addition, the Clark County Defendants argue that a federal injunction in this case would interfere with the Nevada juvenile court's management of its own cases.  (Mot. to Dismiss (#20) at 19).  According to Defendants, the juvenile court retains continuing jurisdiction over every child in Clark County foster care, including the Plaintiffs in this action, pursuant to NRS 432B.580.  Under that statute, "if a child is placed pursuant to NRS 432B.550 other than with a parent, the placement must be reviewed by the court at least semiannually, and within 90 days after a request by a party to any of the prior proceedings."  NRS 432B.580(1).  As a result, the Clark County

Defendants state that the Plaintiffs, and all members of the putative classes, are subject to ongoing state court proceedings in juvenile court. (Mot. to Dismiss (#20) at 20). Because Plaintiffs are subject to ongoing state court proceedings, Defendants argue that this Court should abstain from interfering with those proceedings.[3] Defendants state injunctive relief on this claim would "improperly give this court an oversight role and direct control over decisions currently vested in the juvenile court." Id. at 22.

In response, Plaintiffs assert that there is no reason for this Court to abstain because Plaintiffs are seeking to enforce "a federal statute" under which Defendants "ensure guardian ad litem representation." (Opp'n (#36) at 51). Because they are seeking federal relief, Plaintiffs assert that abstention is unwarranted. Plaintiffs concede that they are "involved in ongoing dependency proceedings in the state juvenile court;" however, Plaintiffs state that injunctive relief on this claim would not interfere with the state proceedings because this Court would not be required to review any decisions made by the state court, nor would this Court be required to overrule the state court and appoint or replace a guardian ad litem. Id. at 56. Rather, Plaintiffs state they are merely seeking relief from county and state officials for violations of a federal duty. Id. According to Plaintiffs, "[r]equiring Defendants to recruit and train more guardians ad litem in any way Defendants see fit to do would not interfere with or enjoin the dependency court proceedings." Id.

Generally, the Supreme Court's decision in Younger and its progeny direct federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. Younger v. Harris, 401 U.S. 37, 40-41, 91 S.Ct. 746 (1971); Samuel v. Mackell, 401 U.S. 66, 73, 91 S.Ct. 764 (1971)(holding that "where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well"). The Younger doctrine "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate injury to the federal plaintiff." Moore

---

[3] According to Defendants, not only are Plaintiffs involved in ongoing state court proceedings, but Defendants assert that these proceedings are matters of important state interest and any claim regarding the appointment of a guardian ad litem may, and should be raised in the juvenile court.

v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371 (1979).  When federal courts disrupt a state court's opportunity to "intelligently mediate federal constitutional concerns and state interests" and interject themselves into such disputes, "they prevent the informed evolution of state policy by state tribunals."  Moore, 442 U.S. at 429-30, 99 S.Ct. 2371.

While the doctrine was first articulated in the context of pending state criminal proceedings, the Supreme Court has applied it to civil proceedings in which important state interests are involved.  Id.; see Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200 (1975). "The seriousness of federal judicial interference with state civil functions has long been recognized by the Court. [It has] consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence."  Huffman, 420 U.S. at 603, 95 S.Ct. 1200.

In the absence of "extraordinary circumstances," abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims.  See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).  According to the Ninth Circuit, where these standards are met, a district court "may not exercise jurisdiction" and there "is no discretion in the district courts to do otherwise."  San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008).  "Where Younger abstention is appropriate, a district court cannot refuse to abstain, retain jurisdiction over the action, and render a decision on the merits after the state proceedings have ended.  To the contrary, Younger abstention requires *dismissal* of the federal action."  Beltran v. State of Cal., 871 F.2d 777, 782 (9th Cir. 1988)(emphasis in original).

### i. Interference with Ongoing State Proceedings

As noted in the foregoing, Plaintiffs concede that they are involved in ongoing dependency proceedings in the state juvenile court.  However, Plaintiffs state that injunctive relief on this claim would not interfere with the state proceedings because this Court would not be required to review any decisions made by the state court, nor would this Court be

1   required to overrule the state court and appoint or replace a guardian ad litem.

2   "Courts have concluded that continuing state dependency proceedings, which involve

3   the plaintiffs in a federal action that challenges the constitutionality of the services and

4   process received, are 'ongoing state proceedings' for purposes of Younger abstention." E.T.

5   v. George, 681 F.Supp.2d 1151, 1169 (E.D.Cal. 2010)(quoting 31 Foster Children, 329 F.3d

6   1275).; see also H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000)(holding that

7   the ongoing proceeding element was satisfied because the plaintiffs' complaint sought "an

8   order requiring procedural due process to be observed in the future course of litigation" of the

9   plaintiffs' pending state custody proceedings); J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1291

10   (10th Cir. 1999); Laurie Q. v. Contra Costa County, 304 F.Supp.2d 1185, 1203 (N.D.Cal.

11   2004)(holding that challenge to county's foster care system implicated ongoing dependency

12   court proceedings).

13   However, Younger abstention is only implicated "when the relief sought in federal court

14   would in some manner directly 'interfere' with ongoing state judicial proceedings." Green v.

15   City of Tuscon, 255 F.3d 1086, 1097 (9th Cir. 2001)(en banc). "In order to decide whether the

16   federal proceeding would interfere with the state proceeding, [courts] look to the relief

17   requested and the effect it would have on the same proceedings." 31 Foster Children, 329

18   F.3d at 1276 (holding that an action for declaratory and injunctive relief arising out of

19   challenges to Florida's foster care system would interfere extensively with the ongoing

20   dependency cases of each plaintiff). In 31 Foster Children, plaintiffs filed constitutional claims

21   relating to Florida's foster care system and requested that the court declare the defendants'

22   practices unconstitutional and unlawful and grant injunctive relief that would prevent future

23   violations and ensure compliance. Id. The Eleventh Circuit held that the broad implication

24   of the relief sought was to take the responsibility away from state courts and put it under

25   control of the federal court. Id. Such action "constitute[d] federal court oversight of state court

26   operations, even if not framed as direct review of state court judgements that is problematic,

27   ///

28   ///

24

calling for <u>Younger</u> abstention." <u>Id.</u>  In <u>J.B. ex rel Hart</u>, the Tenth Circuit held that declaratory and injunctive relief directed at state institutions involving dependant children warranted abstention because the requested relief would require a supervisory role over the entire state program.  186 F.3d at 1280.

In this case, the relief requested by Plaintiffs on this claim would necessarily interfere with ongoing juvenile court proceedings.  The juvenile court retains continuing jurisdiction over every child in foster care, including the Plaintiffs in this action, pursuant to NRS 432B.580.  Under that statute, "if a child is placed pursuant to NRS 432B.550 other than with a parent, the placement must be reviewed by the court at least semiannually, and within 90 days after a request by a party to any of the prior proceedings."  NRS 432B.580(1).  As a result, Plaintiffs, and all members of the putative classes, are subject to ongoing state court proceedings in juvenile court.  In addition, NRS 432B.500 provides that the juvenile court "shall appoint a guardian ad litem for the child."  As such, this Court's intervention on the appointment of a guardian ad litem would directly interfere with the juvenile court's mandate to appoint a guardian ad litem.  The injunctive relief sought by Plaintiffs would require this Court to monitor the state court system and would take the responsibility away from that court and put it under control of the federal court.  As discussed by the Eleventh Circuit, such oversight calls for abstention under the principles of <u>Younger</u>.

Thus, the Court finds that the relief requested by Plaintiffs severely interferes with the operation of state court proceedings.  Any injunctive or declaratory relief necessarily implicates the validity of pending dependency court proceedings, as well as Nevada law mandating certain actions be taken by the state court.  Further, the requested relief would likely be impossible to enforce without violation of established principles of federalism and comity.  As such, the first element of <u>Younger</u> abstention is present in this case.

### ii.  Important State Interests

It does not appear from the parties' briefs that they dispute that this litigation implicates important state interests.  Indeed, the law is clear that "[f]amily relations are a traditional area of state concern."  <u>Moore</u>, 442 U.S. at 435, 99 S.Ct. 2371.  Further, "[p]roceedings necessary

1    for the vindication of important state policies or for the functioning of the state judicial system

2    . . . evidence the state's substantial interest in the litigation." Middlesex County Ethics Comm.,

3    457 U.S. at 432, 102 S.Ct. 2515.  Accordingly, the Court finds that the second element of

4    Younger abstention is present in this case.

5                          **iii.  Adequate Opportunity to Present Federal Claims**

6            Plaintiffs contend that the juvenile court proceedings do not afford them an adequate

7    opportunity to raise the guardian ad litem class claim.  (Consolidated Opp'n (#36) at 56).

8    According to Plaintiffs, without an appointed guardian ad litem, Plaintiffs have no opportunity

9    to raise their right to representation in their juvenile court cases or to exercise their right to

10   appeal.

11           In determining whether a state court provides an adequate opportunity to present

12   federal claims, courts hold that "[m]inimal respect for state processes . . . precludes any

13   presumption that the state court will not safeguard federal constitutional rights."  Middlesex

14   County Ethics Comm., 457 U.S. at 431, 102 S.Ct. 2515.  Rather, a federal court "should

15   assume that state procedures will afford an adequate remedy, in the absence of unambiguous

16   authority to the contrary."  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 S.Ct. 1519 (1987).  As

17   such, a plaintiff opposing abstention bears the burden of establishing that the pending state

18   proceedings do not provide an adequate remedy for their federal claims.  31 Foster Children,

19   329 F.3d at 1279.

20           In this matter, Defendants have provided Nevada case law which provides that the

21   Nevada Supreme Court has the authority, on appeal, to determine constitutional issues

22   involved in a juvenile proceeding.  See Scott E. v. State, 113 Nev. 234, 238, 931 P.2d 1370

23   (Nev. 1997).  As such, any constitutional questions, arising under the federal or state

24   constitution, in juvenile proceedings may be addressed and appealed to the Nevada Supreme

25   Court.  Plaintiffs do not dispute this authority.  Rather, Plaintiffs state that if they are not

26   appointed a guardian ad litem at the outset, they will have no one to raise a constitutional

27   issue on their behalf.  However, Plaintiffs' argument is belied by this very case.  The same

28   representatives that brought the federal constitutional claims in this action, could challenge

the constitutionality of the juvenile court proceedings without implicating sensitive issues of federalism and comity.  Thus, Plaintiffs have failed to overcome the presumption that their pending state court proceedings provide an adequate opportunity for judicial review of their federal claims.

Therefore, based on the foregoing analysis, the Court finds that it must abstain from adjudicating this claim pursuant to <u>Younger v. Harris</u>.  If this Court were to adjudicate this claim, it would interfere with ongoing state juvenile proceedings that implicate important state interests.  In addition, Plaintiffs have failed to overcome the presumption that their pending state court proceedings provide an adequate opportunity for judicial review of their federal claims.

### 4. Child Abuse Prevention and Treatment Act; Early Intervention Services

Plaintiffs' Tenth Cause of Action asserts a class claim under § 1983 for violation of 42 U.S.C. § 5106a(b)(2)(A)(xxi) and 20 U.S.C. § 1437(a)(6)(A).  According to Plaintiffs, Defendants' "acts and omissions" deprived the class members "of particular statutory rights."  Defendants argue that this claim should be dismissed because there is no section 1983 enforceable right to early intervention services.  In addition, Defendants argue that they are entitled to qualified immunity on this claim.

As noted in the foregoing, 42 U.S.C. § 5106a provides for grants to states for child abuse and neglect prevention and treatment programs.  Section 5106a(b)(2)(A)(xxi) provides that to be eligible to receive a grant under the statute, a state shall submit a plan and that plan "shall contain an outline of the activities that the State intends to carry out using amounts received under the grant to achieve the purposes of this subchapter," including "provisions and procedures for referral of a child under the age of 3 who is involved in a substantial case of child abuse or neglect to early intervention services funded under part C of the Individuals with Disabilities Education Act."

///

///

1       As noted in the previous analysis under CAPTA, most courts have held that under the

2   Blessing test there is no private right of action for claims brought under 42 U.S.C. §

3   5106a(b)(2).  The Court agrees with that analysis and finds that there is no private right of

4   action.  Also, the Court finds that even if there were a private right of action, Defendants are

5   entitled to qualified immunity on Defendants' early intervention services claim under CAPTA

6   because Plaintiffs have not asserted a violation of a "clearly established" statutory

7   constitutional right.

8       The other statutory basis for Plaintiffs' early intervention services claim is also

9   dismissed on the grounds that Plaintiffs' failed to state a claim for relief.  The Individuals with

10  Disabilities Education Act ("IDEA") provides that "[t]he Secretary shall . . . make grants to

11  States . . . to assist each State to maintain and implement a statewide, comprehensive,

12  multidisciplinary, interagency system to provide for early intervention services for infants and

13  toddlers with disabilities and their families."  20 U.S.C. § 1433.  Section 1437 of that act

14  provides for the application and assurances a state must provide to receive a grant under the

15  statute.  Under Section 1437(a)(6)(A), a state seeking a grant under the Act, must submit an

16  application to the Secretary, and the application must contain "a description of the State

17  policies and procedures that require the referral for early intervention services under this

18  subchapter of a child under the age of 3" who is either involved in a substantial case of child

19  abuse or neglect, or is identified as affected by illegal substance abuse, or withdrawal

20  symptoms resulting from prenatal drug exposure.

21      In Blanchard v. Morton School Dist., the Ninth Circuit held that there was no private

22  section 1983 claim for the violation of rights under the IDEA.  509 F.3d 934, 938 (9th Cir.

23  2007).  In that case, plaintiff was seeking damages to compensate her for lost income and the

24  emotional distress she experienced during her ultimately successful efforts to obtain benefits

25  for her son under the IDEA, 20 U.S.C. §§ 1400-1482.  In that case, the court noted that

26  section 1983 does not, in itself, create any right under federal law.  Id.  Rather, "[i]t provides

27  remedies for violations of federal rights only where a 'federal statute creates an individually

28  enforceable right in the class of beneficiaries to which [plaintiff] belongs.'"  Id. (quoting City of

28

Rancho Palos Verdes v. Abrams, 544 U.S. 113, 120, 125 S.Ct. 1453 (2005)).  The court noted that in Smith v. Robinson, 468 U.S. 992, 1013, 104 S.Ct. 3457 (1984), the Supreme Court held that "the Education of the Handicapped Act ('EHA'), the predecessor to the IDEA, was the exclusive means of remedying violations of the rights it guaranteed." Id. at 937.  In response, according to the Ninth Circuit, "Congress amended the statute to include what now is 20 U.S.C. § 1415(l)." Id. That amendment stated that: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities . . . ." 20 U.S.C. § 1415(l).  The Ninth Circuit stated that there "is an existing circuit split on whether, with the amendment, Congress intended the IDEA rights to be enforceable under § 1983." Id.  "The First, Third, Fourth, and Tenth Circuits have held that Congress did not so intend." Id. "The Second and Seventh Circuits have held that Congress did so intend."  Id.  The Ninth Circuit stated that it was persuaded by the Third Circuit which found that there was no enforceable right under section 1983 for a violation of the IDEA.  The Ninth Circuit noted with approval the Third Circuit's holding that the IDEA is a comprehensive scheme, and that the IDEA provides judicial remedies for violations of its provisions.  Id.  As such, the Ninth Circuit held that "Congress did not intend § 1983 to be available to remedy violations of the IDEA."  Id. (quoting A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 797-803 (3d Cir. 2007)).

In Carney ex rel. Carney v. Nevada ex rel. Dept. of Educ., the Nevada district court held that there was no enforceable section 1983 claim available under the IDEA.  2007 WL 777697 *2 (D.Nev. 2007).  In that case, the court noted that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."  Id. (quoting Middlesex County v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20, 101 S.Ct. 2615 (1981)).  The court stated that the IDEA had a comprehensive enforcement scheme and dismissed Plaintiffs' § 1983 claims for violations of rights granted by the IDEA.

///

In this matter, based on the Ninth Circuit's holding in <u>Blanchard</u>, Plaintiffs' IDEA section 1983 claims are dismissed.  The Ninth Circuit has sided with other courts and circuits in holding that the IDEA has a comprehensive enforcement scheme, directed at resolution, that is incompatible with enforcement through § 1983.

### 5. Negligence Claim

Finally, Defendants assert that they are entitled to immunity for the state law negligence claim asserted against them.  According to the Clark County Defendants, Plaintiffs' negligence claim should be dismissed because Defendants were exercising personal decision-making and judgment in their administration of the Department of Family Services ("DFS").  Because they were exercising personal deliberation, decision-making and judgment, the Clark County Defendants state that their acts were discretionary and entitled to immunity under Nevada law.  The State Defendants also argue that this claim should be dismissed.  According to the State Defendants, Plaintiffs have failed to state a claim for relief because Plaintiffs did not allege "with any specificity that State Defendants owe any duty of care or describe how they breached that duty."  (State Defendants' Motion to Dismiss (#21) at 26).  In addition, the State Defendants also argue that they are entitled to immunity on the negligence claim because "their alleged actions involve individual judgment and are based on policy considerations."  <u>Id.</u> at 27.

In response, Plaintiffs argue that Defendants are not entitled to immunity on the negligence claim because Plaintiffs have asserted that Defendants failed "to initiate duties which they have no discretion to ignore."  (Consolidated Opp'n (#36) at 30).  In other words, Plaintiffs argue that they have asserted ministerial acts against Defendants and the discretionary immunity statute does not apply.

In this case, the Court declines to rule on Plaintiffs' negligence and remaining state law claims pursuant to 28 U.S.C. § 1367(c).  Not only do these claims raise strict issues of state law, but the Court has dismissed all claims over which it has original jurisdiction on the grounds that Defendants are entitled to qualified immunity.

*///*

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Clark County Defendants' Motion to Dismiss (#20) and the State Defendants' Motion to Dismiss (#21) are GRANTED. Defendants are entitled to qualified immunity on the federal law claims asserted against them. The Court declines to exercise jurisdiction over the remaining state law claims.

DATED: This 26th day of October, 2010.

_____
United States District Judge