UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| HENRY A. et al., | ) | |
|           Plaintiffs, | ) | |
| vs. | ) | 2:10-cv-00528-RCJ-PAL |
| MICHAEL WILLDEN et al., | ) | **ORDER** |
|           Defendants. | ) | |

This case arises out of the alleged failure of Nevada and Clark County officials to adequately protect foster children. Pending before the Court are Defendants Tom Morton's, Virginia Valentine's, Lisa Ruiz-Lee's, and Don Burnette's (collectively, "County Defendants") Motion to Dismiss or for a More Definite Statement (ECF No. 185), to which Defendants Michael Willden and Amber Howell have filed a Joinder (ECF No. 194). For the reasons given herein, the Court will order Plaintiffs to make a more definite statement.

**I.   FACTS AND PROCEDURAL HISTORY**

Plaintiffs are eleven children who claim to have been harmed due to the failure of state and county child welfare authorities to adhere to certain mandatory laws and regulations and to ensure their safety as a general matter. Their injuries include abuse and neglect by foster parents and institutional guardians, as well as a lack of medical care due to authorities' refusal to authorize or monitor it.

1        Plaintiff Henry A. is a fourteen-year-old boy who was placed into foster care by the Clark
2 County Department of Family Services ("CCDFS") and the Nevada Division of Children and
3 Family Services ("NDCFS") from 2005 until February 2013, when he was returned to his
4 mother's care. (Second Am. Compl. ¶ 20, July 12, 2013, ECF No. 176).  He suffers from severe
5 mental health problems but his treatment has been sporadic because of his placement with over
6 forty foster families and six or seven caseworkers during his first seven years under CCDFS. (*See*
7 *id.*).  He has changed mental health providers over ten times. (*Id.*).  He has been prescribed
8 multiple psychotropic drugs and once overdosed because of a combination of these drugs,
9 spending several weeks in the intensive care unit. (*Id.*).

10       Plaintiffs Charles B. and Charlotte B. are siblings, ages twelve and four, respectively. (*Id.*
11 ¶ 21).  They were placed into seventeen different placements for foster care by CCDFS from
12 March 2009 to the Fall of 2010, when they were returned to their mother's care. (*Id.*).  CCDFS
13 placed Charles and Charlotte with foster parents in March 2009 despite a court order requiring
14 placement with their grandmother. (*Id.*).  One foster mother and her teenage son abused them,
15 including locking Charlotte in a closet with no food, water, or sanitation for long periods of time
16 and beating Charles when he tried to help his sister. (*Id.*).  The police eventually removed them
17 and took them to the hospital for treatment. (*Id.*).  Charlotte was suffering from dehydration, cuts,
18 bruises, and severe (bleeding) diaper rash. (*Id.*).  The foster mother has been charged with child
19 abuse, and her son has pled guilty to assault. (*Id.*).

20       Plaintiff Linda E. is a twenty-year-old woman who was placed into more than forty
21 different placements for foster care by CCDFS and NDCFS for over fifteen years. (*Id.* ¶ 22).  She
22 suffered abuse and neglect in many of these placements, including being placed into the home of
23 an aunt where she had previously suffered unspecified abuse. (*Id.*).  Linda reported the abuse to
24 her caseworker. (*Id.*).  She did not receive proper medical and psychiatric care. (*Id.*).

25       Plaintiffs Leo and Victor C. are twenty-year-old twins who were placed into foster care by

CCDFS in November 2006. (*Id.* ¶ 23). Leo left the system when he became an adult in December 2010. (*Id.*). Victor, however, chose to remain in the system after age eighteen and now receives benefits under Assembly Bill 350. (*Id.*). Defendants refused to place Leo and Victor in the care of their grandmother, who was ready, willing, and able to provide a safe and appropriate environment for them, instead moving them between their father and their mother and her boyfriend, where they suffered unspecified abuse. (*Id.*). Eventually, either their mother or father abandoned them at Child Haven. (*See id.*). Defendants failed to provide psychiatric care despite Victor's suicidal threats. (*Id.*). Plaintiffs do not allege any untreated psychiatric conditions of Leo.

Plaintiffs Maizy and Jonathan D. are siblings. (*Id.* ¶ 24). Maizy and Jonathan are ages eight and seven, respectively, and were placed into foster care by CCDFS from late 2005 to August 2009. (*Id.*). As infants, Defendants placed them with Child Haven, where they did not receive basic nutrition and medical care. (*Id.*). They were kept on a "formula diet" despite outgrowing it. (*Id.*). Maizy and Jonathan were left in their cribs with limited interaction with other children and adults, resulting in a diagnosis (presumably by a doctor, though not explicitly so alleged) with "failure to thrive," based upon being underweight due to environmental factors. (*See id.*). S.W. has adopted both children. (*Id.*). Defendants have failed to provide authorization for at least three medical procedures for the children despite S.W.'s efforts. (*Id.* ¶ 25). The related conditions became so severe that doctors proceeded with the procedures on an emergency basis. (*Id.*). As a result, Jonathan has a misshapen colon that must be surgically corrected due to Defendants' failure to authorize removal of calcified stool from his colon. (*Id.*).

Plaintiff Olivia G. is a twelve-year-old girl who was placed into foster care by CCDFS from January 2006 to 2011. (*Id.* ¶ 26). Defendants failed to remove her from the custody of her parents despite reports that she was being abused. (*Id.*). She was initially placed with various relatives without any effort to determine if they were able to provide appropriate care. (*Id.*). She

was abused in some of those homes, including being beaten with a belt. (*Id.*).  She has severely impaired neuropsychological functioning and several cognitive and behavioral impairments as a result. (*Id.*).  She was also prescribed multiple psychotropic drugs without adequate care and monitoring, including being placed with E.F. without providing E.F. the information and authorizations required to obtain Olivia's prescriptions. (*Id.*).

Plaintiff Christine F. is a six-year-old girl who was placed into foster care by CCDFS from May 2008 to June 2010, when E.F. adopted her. (*Id.* ¶ 27).  Christine is severely developmentally delayed and suffers form permanent disabilities and a seizure disorder due to having fallen from a second-story window at the home of her mother, grandmother, and two uncles. (*See id.*).  Despite marks around her ankles indicating she had been dangled from the window or been swung into a wall, CCDFS did not investigate and take custody of Christine until her parents refused to authorize medical treatment necessary to treat her injuries. (*Id.*).  Defendants later failed to provide E.F. with Christine's seizure medications and offered no medical support or training on how to care for her special needs. (*Id.*).  Defendants have also permitted her grandmother to visit her despite knowing of past allegations of abuse against her and that she was watching over Christine when she fell from the window. (*Id.*).[1]

Plaintiff Mason I. is a fifteen-year-old boy who has been placed into foster care by CCDFS since July 2003. (*Id.* ¶ 28).  Mason has been deaf since birth and entered foster care at age six after suffering physical, sexual, and emotional abuse by his parents and grandparents. (*Id.*).  He suffers from post-traumatic stress disorder, reactive attachment disorder, and other serious mental health problems. (*Id.*).  During his first six years in foster care, he was placed into twenty-five different homes, including a treatment center in Florida, the National Deaf Academy ("NDA"). (*Id.*).  The NDA staff rendered Mason's cochlear implant permanently inoperative

---

[1] Plaintiff does not allege actual abuse by this person against Christine herself or any other person, but notes only that CCDFS was aware of prior allegations of abuse.

against his wishes. (*Id.*). Defendants ignored Mason's complaints of sexual abuse by NDA staff. (*Id.*). Defendants have failed to place Mason into homes where his special needs will be met, i.e., with a qualified American Sign Language interpreter and have failed to provide speech therapy. (*Id.*). Defendants have failed to disclose Mason's medical, mental, social, and educational backgrounds to his foster parents and have failed to properly supervise the administration of Mason's psychotropic drugs. (*Id.*).

The current State Defendants are Michael Willden, Director of the Nevada Department of Health and Human Services ("NDHHS"), sued in his official capacity, (*id.* ¶ 30); and Amber Howell, the Administrator of NDCFS, sued in her official capacity, (*id.* ¶ 31). The current County Defendants are Clark County, Nevada, (*id.* ¶ 33); Virginia Valentine, the Clark County Manager from August 2006 to January 2011, sued in her individual capacity, (*id.* ¶ 34); Don Burnette, the current Clark County Manager, sued in his official capacity, (*id.* ¶ 35); Tom Morton, the Director of CCDFS from July 2006 to August 2011, sued in his individual capacity, (*id.* ¶ 36); and Lisa Ruiz-Lee, the current Director of CCDFS, sued in her official capacity, (*id.* ¶ 37). The current "Doe Defendants"[2] are ten current or former caseworkers, licensing investigators, and other employees of CCDFS: Stacey Scott, Thor Martinez, Debbie Mallwitz, Sonya Weathers, Darrel Ford, Yvette Chevalier, Teresa Cragon, Philomena Osemwengie, Sylvia Clark, and Patricia Martin. (*Id.* ¶¶ 38–54).

Plaintiffs filed the seventy-five-page Complaint in this Court on April 13, 2010, listing the following twelve nominal claims: (1)–(2), (11) substantive due process violations pursuant to 42 U.S.C. § 1983; (3), (8) violations of the Adoption Assistance and Child Welfare Act ("AACWA") pursuant to § 1983; (4), (12) substantive due process violations under the Nevada

---

[2] It is not clear why these Defendants are listed as "Doe Defendants." Their identities are clearly alleged. Plaintiffs also allege the existence of additional "Doe Defendants," (*see id.* ¶ 56), but that pleading practice has no effect in federal court.

Constitution; (5) negligence; (6) declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 that Nevada Revised Statute ("NRS") section 424.090 violates the Supremacy Clause; (7) declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 that NRS section 432.0177 violates the Supremacy Clause; and (9)–(10) violations of the Child Abuse Prevention and Treatment Act ("CAPTA") pursuant to § 1983. The case was assigned to the Hon. Howard D. McKibben but was reassigned to this Court after Judge McKibben recused himself.

Defendants moved to dismiss. Plaintiffs voluntarily dismissed the sixth and seventh nominal claims (the Supremacy Clause claims). In a thirty-one-page order, the Court granted the motions to dismiss. (*See* Order, Oct. 26, 2010, ECF No. 85). The Court ruled: (1) Defendants in their official capacities were not entitled to Eleventh Amendment protection from claims for prospective injunctive relief; (2) Defendants were not entitled to absolute immunity; (3) Defendants were entitled to qualified immunity from the "duty to protect" substantive due process claim; (4) Defendants were entitled to qualified immunity from the "state created danger" substantive due process claim, and that claim was also dismissed for failure to state a claim; (5) sections 671(a)(10), (16) and 675(1), (5)(A)(ii), (5)(D) of the AACWA created no private right of action, and Defendants would be entitled to qualified immunity against these claims in any case; (6) Defendants were entitled to qualified immunity from the "guardian ad litem" CAPTA claim, and the Court would abstain from ruling on that claim under *Younger v. Harris*, 401 U.S. 37 (1971) due to pending state proceedings; (7) there was no private right of action for a "plan submission" claim under CAPTA; and (8) the Court would decline to rule on the negligence claim under 28 U.S.C. § 1367(c).

Plaintiffs appealed. In a thirty-four-page opinion, the Court of Appeals affirmed in part, reversed in part, and remanded. The Court affirmed the dismissal of all claims except the first, second, third, eighth, and eleventh, which claims it remanded for further proceedings, and ruled that Plaintiffs should be permitted to amend the substantive due process claims after remand and

should be able to seek leave to amend the tenth claim. The Court of Appeals ruled that qualified immunity applied only to Defendants in their individual capacities and only as to monetary damages. It reversed the qualified immunity rulings as to injunctive relief and as to monetary damages against Clark County as to the first and eleventh causes of action and remanded for further analysis of qualified immunity as to the claims for monetary damages against Defendants in their individual capacities. As to the second cause of action, the Court of Appeals ruled that the "state created danger" doctrine applied not only when the state actually created the danger, but also when the state knowingly exposed a person to an existing danger from a third person. The Court of Appeals therefore reversed dismissal of the second claim and this Court's grant of qualified immunity. The Court of Appeals ruled that Plaintiffs had not sufficiently pled supervisory responsibility claims against State Defendants but should be given leave to amend the substantive due process claims to do so. The Court of Appeals ruled that the "case plan" provisions of AACWA under 42 U.S.C. §§ 671(a)(16) and 675(1) and the "records provision" provisions of AACWA under §§ 671(a)(16), 675(1), and 675(5)(d) were privately enforceable. The Court of Appeals affirmed that the "guardian ad litem" and "early intervention" provisions of CAPTA, as well as the Individuals with Disabilities Education Act provision Plaintiffs invoked, were not privately enforceable.

Plaintiffs filed the Amended Complaint ("AC"), listing six nominal claims: (1)–(2) substantive due process violations pursuant to § 1983; (3), (6) AACWA violations pursuant to § 1983; (4) substantive due process violations under the Nevada Constitution; and (5) negligence. State Defendants and County Defendants separately moved to dismiss the AC. The Court granted the motions in part and denied them in part:

> (1) The substantive due process claims, both federal and state, are dismissed as against Defendants Willden and Comeaux insofar as they seek damages against them in their individual capacities. Under the law of the case, however, no Defendants have qualified immunity at the dismissal stage. The claims for injunctive relief are moot except as to failure to provide health information to foster parents

(Henry A.), failure to investigate reports of abuse (Mason I.), and failure to inspect out-of-state facilities (Mason I.).

   (2) The Eleventh Amendment protects State Defendants in their official capacities from money damages as to any claim.

   (3) The AACWA "records provision" claim is dismissed as to money damages against Willden and Comeaux in their individual capacities, and the claim for injunctive relief is moot, except as to Plaintiffs Henry A. and Mason I. The AACWA "case plan" claim is dismissed as to all Defendants, with leave to amend.

   (4) The negligence claim is dismissed under the discretionary immunity statute, except as to Christine F.'s and Mason I.'s claims invoking a negligence per se theory under NRS section 432B.260 and Olivia G.'s, Christine F.'s, and Mason I.'s claims invoking a negligence per se theory under NRS section 424.038. Plaintiffs may amend their negligence claim to plead negligence per se theories based upon violations of state statutes, but not based upon violations of federal law or state administrative regulations.

(Order 28:7–24, Feb. 27, 2013, ECF No. 141).

Plaintiffs moved for leave to file the Second Amended Complaint ("SAC"), which motion the Court granted in part. County Defendants asked the Court to reconsider its previous order in part. The Court granted that motion in part, granting qualified immunity to individual Defendants as to monetary damages under the AACWA, but not as to the substantive due process claims. The Court dismissed the "no-case-plan" claim as against County Defendants, with leave to amend. The Court also clarified that:

> The negligence claim remains viable against County Defendants insofar as it is predicated upon a negligence per se theory for violations of NRS sections 432B.260 (Christine F. and Mason I.) and 424.038 (Olivia G., Christine F., and Mason I.), and Plaintiffs have leave to amend as to NRS sections 432.0177 and 127.330, and as to other Plaintiffs' claims.

Plaintiffs have filed the SAC. The 101-page SAC lists five causes of action: (1) Substantive Due Process (Duty to Protect) violations pursuant to 42 U.S.C. § 1983 (against all Defendants except Ford, Chevalier, and Osemwengie); (2) Substantive Due Process (State Created Danger) violations pursuant to § 1983 (against all Defendants except Osemwengie); (3) AACWA violations (health care records) pursuant to § 1983 (against Clark County, Willden,

Howell, Burnette, and Ruiz-Lee); (4) Negligence (against Clark County, Morton, Valentine, Clark, Chevalier, Ford, Mallwitz, Martin, Martinez, Osemwengie, Scott, and Weathers); and (5) AACWA violations (written case plan) pursuant to § 1983 (against Clark County, Willden, Howell, Burnette, and Ruiz-Lee). County Defendants have moved to dismiss or for a more definite statement, and State Defendants have joined the motion. Doe Defendants have not joined the motion.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

///

## III.   ANALYSIS

Movants ask the Court to dismiss the fifth cause of action of the SAC, which corresponds to the sixth cause of action of the former AC, for failure to state a claim.  Movants note that the Court previously ruled that class representatives under the AC, Henry A. and Mason I., would have no standing to seek injunctive relief for not receiving an initial case plan within sixty days of removal under the AACWA if they had eventually received a timely case plan, because such retroactive injunctive relief was impossible, but that they would have standing to assert a claim that sixty days had passed since they were removed from the home and they still had received no case plan, because injunctive relief could provide a remedy for the continuing harm of having no case plan.  The Court dismissed because neither Henry A. nor Mason I. alleged in the AC having not received a case plan within sixty days of removal from their homes.

Movants note that only Mason I. is listed as a class representative for the AACWA case plan claim in the TAC. (*See* Third Am. Compl. ¶ 171).  Plaintiffs are correct that they have alleged that Mason I. has not received a plan that complied with AACWA's requirements. (*See id.* ¶ 189 ("The Case Plan Representative entered care in July 16, 2003.  He has not received a case plan that complied with federal law during his years in foster care.")).  But this is, as Movants note in reply, conclusory.  There are relevant five requirements for case plans under the AACWA:

> (1) Be a written document, which is a discrete part of the case record, in a format determined by the title IV–E agency, which is developed jointly with the parent(s) or guardian of the child in foster care; and
>
> (2) Be developed within a reasonable period, to be established by the title IV–E agency, but in no event later than 60 days from the child's removal from the home pursuant to paragraph (k) of this section;
>
> (3) Include a discussion of how the case plan is designed to achieve a safe placement for the child in the least restrictive (most family-like) setting available and in close proximity to the home of the parent(s) when the case plan goal is reunification and a discussion of how the placement is consistent with the best interests and special

    needs of the child. (FFP is not available when a court orders a placement with a specific foster care provider);

    (4) Include a description of the services offered and provided to prevent removal of the child from the home and to reunify the family; and

    (5) Document the steps to finalize a placement when the case plan goal is or becomes adoption or placement in another permanent home in accordance with sections 475(1)(E) and (5)(E) of the Act. When the case plan goal is adoption, at a minimum, such documentation shall include child-specific recruitment efforts such as the use of State, Tribal, regional, and national adoption exchanges including electronic exchange systems.

45 C.F.R. § 1356.21(g). The allegation that Mason I. has not received a case plan that complies with federal law is sufficient to state a claim, but it is indeed vague and envisions multiple possible scenarios, some of which may not support standing to seek injunctive relief. Perhaps Mason I. never received any case plan. Such an allegation would state a claim under all subsections and would support standing. Perhaps he received an oral case plan that complies with all subsections except subsection (g)(1), because it is not written. Such an allegation would state a claim under subsection (g)(1) and would probably support standing. Perhaps he received a written case plan that complies with all subsections except subsection (g)(2), because it was not received within sixty days of removal from the home. Such an allegation would state a claim under subsection (g)(2) but would not support standing to seek injunctive relief. The Court will therefore order Plaintiffs to file a more definite statement as to this issue so that Defendants may reasonably respond to the fifth cause of action.

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss or for a More Definite Statement (ECF No. 185) is GRANTED IN PART and DENIED IN PART. The Court will not dismiss, but Plaintiffs shall FILE a more definite statement as to the nature of Mason I.'s case plan deficiencies under 45 C.F.R. § 1356.21(g) within fourteen (14) days of the entry of this Order into the electronic docket. Plaintiffs may make the filing via amendment or separate affidavit. If Plaintiffs choose amendment, they shall not amend in additional ways.

IT IS SO ORDERED.

Dated this 10th day of January, 2014.

_____
ROBERT C. JONES
United States District Judge