1   J. BRUCE ALVERSON, ESQ. (Nevada Bar No. 1339)
    KARIE N. WILSON, ESQ. (Nevada Bar No. 7957)
2   ALVERSON TAYLOR
    MORTENSEN & SANDERS
3   7401 W. Charleston Boulevard
    Las Vegas, NV 89117
4   702-384-7000 Phone
    702-385-7000 Fax
5
    JACK LONDEN (*Pro Hac Vice*)
6   MARK W. DANIS (*Pro Hac Vice*)
    AURORA V. KAISER (*Pro Hac Vice*)
7   DINAH X. ORTIZ (*Pro Hac Vice*)
    SARAH N. DAVIS (*Pro Hac Vice*)
8   MORRISON & FOERSTER LLP
    425 Market Street, Suite 3200
9   San Francisco, California 94105-2482
    415-268-7000 Phone
10  415-268-7522 Fax
11  WILLIAM GRIMM *Pro Hac Vice*)
    LEECIA WELCH (*Pro Hac Vice*)
12  ERIN LIOTTA (*Pro Hac Vice*)
    NATIONAL CENTER FOR YOUTH LAW
13  405 – 14th Street, 15th Floor
    Oakland, CA 94612
14  510-835-8098 Phone
    510-835-8099 Fax
15
    Co-Attorneys for Plaintiffs
16  HENRY A. *et al.*

17              UNITED STATES DISTRICT COURT

18                   DISTRICT OF NEVADA

19  HENRY A., by his next friend M.J.; CHARLES and         Case No.: 2:10-CV-00528-RCJ-PAL
    CHARLOTTE B., by their next friend R.D.; LEO C.;
20  VICTOR C.; MAIZY and JONATHAN D. by their              **JOINT PETITION AND**
    next friend S.W.; LINDA E.; CHRISTINE F., and          **MEMORANDUM IN SUPPORT**
21  OLIVIA G. by their next friend E.F., and MASON I.,     **OF PETITION FOR APPROVAL**
    by his next friend M.J., individually and on behalf of **OF PLAINTIFFS' NEGOTIATED**
22  others so situated,                                    **ATTORNEYS' FEES AND COSTS**

23                   Plaintiffs,

24          vs.

25  MICHAEL WILLDEN, Director of the Nevada
    Department of Health and Human Services; DIANE
26  COMEAUX, former Administrator of Nevada
    Division of Child and Family Services; AMBER
27  HOWELL, Administrator of Nevada Division of
    Child and Family Services; VIRGINIA VALENTINE,
28  former Clark County Manager; DON BURNETTE,
    Clark County Manager; CLARK COUNTY; TOM

1   MORTON, former Director of Clark County
    Department of Family Services; LISA RUIZ-LEE,
2   Director of Clark County Department of Family
    Services; SYLVIA CLARK, Senior Family Services
3   Specialist; YVETTE CHEVALIER, Caregiver
    Services Manager; TERESA CRAGON, Case
4   Manager; DARREL FORD, Licensing Investigator;
    DEBBIE MALLWITZ, Family Services Specialist II;
5   PATRICIA MARTIN, Family Services Specialist;
    THOR MARTINEZ, Family Services Specialist I;
6   PHILOMENA OSEMWENGIE, Senior Family
    Services Specialist;  STACEY SCOTT, Family
7   Services Specialist I; SONYA WEATHERS, Family
    Services Specialist II; and DOES XI-XX,
8
                    Defendants.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

III. DISCUSSION .................................................................................................. 5

    A. Plaintiffs Are Entitled to Attorneys' Fees and Costs Under 42 U.S.C.
       Section 1988 and Under the Parties' Settlement Agreement. .................................. 5

    B. The Parties' Settlement Agreement Is Fair and Reasonable. ................................... 5

    C. The Fees and Costs Agreed to by the Parties Are Reasonable. .............................. 7

        1. Plaintiffs have agreed to settle for a significant reduction of their
           fee claim. .............................................................................................. 7

        2. The *Kerr* factors weigh in favor of approving this fee settlement. ............. 9

        3. The fee settlement is reasonable in light of the substantial costs and
           out-of-pocket litigation expenses that Plaintiffs' counsel have
           expended. .............................................................................................. 14

IV. CONCLUSION ................................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4   *Blum v. Stenson,*
      465 U.S. 886 (1984) ..................................................................................................... 11

5

6   *City of Riverside v. Rivera,*
      477 U.S. 561 (1986) ....................................................................................................... 5

7   *Dang v. Cross,*
      422 F.3d 800 (9th Cir. 2005)....................................................................................... 14

8

9   *Doe v. Gill,*
      No. C 11-5009, 2012 U.S. Dist. LEXIS 74250 (N.D. Cal. May 29, 2012) ............... 6

10  *Fed. Deposit Ins. Corp. v. Lake Elsinore 521, LLC,*
      No. 2:11-cv-00386-GMN-LRL, 2011 U.S. Dist. LEXIS 126866

11    (D. Nev. Nov. 1, 2011)................................................................................................. 7

12  *Fullmer v. Brown,*
      No. 2:09-cv-01442-BES-PAL (D. Nev. Dec. 7, 2011) ............................................... 6

13

14  *Guerra v. Madera Mgmt. Co.,*
      No. 1:11-cv-01488, 2012 U.S. Dist. LEXIS 132510 (E.D. Cal. Sept. 17, 2012)...................... 6

15  *Guerrero v. Brentwood Union Sch. Dist.,*
      No. 13-03873 LB, 2014 U.S. Dist. LEXIS 47167 (N.D. Cal. Apr. 4, 2014) .......................... 13

16
      *Harris v. Marhoefer,*
17    24 F.3d 16 (9th Cir. 1994)........................................................................................... 14

18  *Hensley v. Eckerhart,*
      461 U.S. 424 (1983) .............................................................................................. 7, 10

19
      *Johnson v. Clayton,*
20    No. 2:08-cv-01810-RCJ-LRL (D. Nev. Dec. 28, 2010)........................................... 6, 7

21  *K.J. v. Div. of Youth & Family Servs.,*
      No. 1:04-cv-03553-JBR (D.N.J. Mar. 15, 2006) ..................................................... 13

22
      *Kerr v. Screen Extras Guild, Inc.,*
23    526 F.2d 67 (9th Cir. 1975).......................................................................................... 7, 9

24  *Martinez v. City of Avondale,*
      No. CV-12-1837, 2014 U.S. Dist. LEXIS 28941 (D. Ariz. Mar. 6, 2014) ................ 6

25
      *Mendez v. Cnty. of San Bernardino,*
26    540 F.3d 1109 (9th Cir. 2008)....................................................................................... 5

27  *Mendez v. Reinforcing Ironworkers Union Local 416,*
      No. 2:09-cv-02332-LRH-NJK, 2013 U.S. Dist. LEXIS 120893

28    (D. Nev. Aug. 22, 2013)................................................................................................ 8

*Mix v. Jones-Johnson,*
  No. 2:06-cv-411-RLH-LRL (D. Nev. Aug. 19, 2009) ............................................ 6, 7

*Perdue v. Kenny A.,*
  559 U.S. 542 (2010) ................................................................................................. 1

*Riker v. Gibbons,*
  No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841
  (D. Nev. Oct. 28, 2010) ........................................................................................... 11

*Robidoux v. Rosengren,*
  638 F.3d 1177 (9th Cir. 2011) ............................................................................. 5, 6

*Van Asdale v. Int'l Game, Tech.,*
  No. 3:04-cv-00703-RAM, 2011 U.S. Dist. LEXIS 56715 (D. Nev. May 24, 2011) ........... 8, 9

*Woods v. Carey,*
  722 F.3d 1177 (9th Cir. 2013) .............................................................................. 14

**STATUTES & RULES**

28 U.S.C.
  § 1920 ....................................................................................................................... 4

42 U.S.C.
  § 1983 ...................................................................................... 2, 5, 11, 13
  § 1988 ............................................................................................... 1, 4, 5

LR 54-16(b)(3) .......................................................................................................... 7, 9

## I.   INTRODUCTION

After four years of hard-fought litigation, the parties have reached a settlement to resolve all of Plaintiffs' claims as to the alleged harms they suffered in Clark County foster care, including any claims for attorneys' fees and costs. Under the settlement, the four minor Plaintiffs and three adult Plaintiffs are to receive a cumulative total of $1,575,000.[1]  Additionally, Clark County Defendants[2] will pay attorneys' fees and costs in the amount of $500,000, which will not be deducted from Plaintiffs' awards. The Clark County Board of County Commissioners approved the parties' settlement at a public hearing on November 18, 2014, and Plaintiffs' Petition to Approve Compromise Settlement and Distribution ("Petition") was filed under seal with this Court on November 21, 2014 (Dkt. 386) and approved on January 9, 2015 (Dkt. 400).

Plaintiffs and Clark County Defendants now petition this Court for approval of the negotiated fees and costs settlement pursuant to 42 U.S.C. Section 1988.  As demonstrated below, Plaintiffs are entitled to recover their fees and costs, and the amount negotiated is fair and reasonable. The settlement amount does not come close to compensating Plaintiffs' counsel for the more than 17,000 hours of work expended on this case along with the roughly $306,439.06 they have spent out-of-pocket. There is a strong presumption that the lodestar method results in a reasonable fee, *Perdue v. Kenny A.*, 559 U.S. 542, 552-53 (2010), and the compromise of $500,000 in fees represents less than 15 percent of Plaintiffs' counsel's lodestar, which is $3,355,260.50.[3]  The negotiated fees and costs also amount to less than 25 percent of the total settlement amount, and Plaintiffs' counsel have waived their right to recover any contingency fee

---

[1] The Plaintiffs' original complaint named thirteen Plaintiffs, but seven currently have claims pending before this court. *See* Plaintiffs' Second Amended Complaint. Dkt. 178, Dkt. 245. (Notice of Voluntary Dismissal Without Prejudice of the Actions of Maizy and Jonathan D., Christine F., and Olivia G.")

[2] Clark County Defendants are all Defendants remaining in the case:  Clark County, Don Burnette, Virginia Valentine, Tom Morton, Lisa Ruiz-Lee, Sylvia Clark, Teresa Cragon, Darrell Ford, Patricia Martin, Thor Martinez, Philomena Osemwengie, Stacey Scott, and Sonya Weathers, represented by Lewis Brisbois Bisgaard & Smith LLP, and Yvette Chevalier and Debbie Mallwitz, represented by Kolesar and Leatham.

[3] The "lodestar" is calculated as the hours reasonably worked multiplied by the reasonable hourly rate.

1   from the clients.

2   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

3           Plaintiffs are former foster children who were in the custody of Clark County's

4   Department of Family Services ("DFS").  They filed suit on April 13, 2010, seeking redress for

5   alleged harms suffered while in foster care.[4]  They sued for violations of their federal

6   constitutional and statutory rights under 42 U.S.C. Section 1983, as well as for violations of

7   Nevada state law.  SAC ¶¶ 198-281.

8           Following four years of litigation, seven Plaintiffs remain in the case, four of whom are

9   minors.  A brief summary of the minor Plaintiffs' claims in the SAC are as follows:

10          Henry A.:  Henry was seven years old when he first came into Clark County custody, and
            he remained in foster care from November 2005 until February 2013.  During this time he
11          suffered numerous alleged harms.  For instance, when he was eleven years old, Henry
            suffered near organ failure allegedly as a result of a medication regimen that involved
12          multiple psychotropic medications.  He was allegedly hospitalized twice in the intensive
            care unit and allegedly nearly died.  The parties have agreed to settle Henry's claims for
13          $325,000.

14          Charles & Charlotte B.:  Charles and Charlotte are siblings who entered Clark County
            foster care at eight years old and three months old, respectively.  They were in care for
15          approximately two years, from March 2009 to March 2011.  In the very first foster home
            into which they were placed, Charlotte, an infant, was allegedly locked in a closet and left
16          unattended, and Charles was allegedly beaten with a plastic baseball bat when he tried to
            help her.  The foster mother and her son were convicted of child abuse, and Charlotte was
17          allegedly hospitalized for several days due to her injuries.  The parties have agreed to
            settle Charles's claims for $150,000 and Charlotte's claims for $100,000.

18
            Mason I.:  Clark County DFS took Mason into custody when he was five years old.  He
19          remained in care for over ten years, until September 2013.  When he was ten years old,
            DFS sent Mason to Florida to an institution for deaf individuals.  While there, he was
20          allegedly sexually abused by staff and by another resident.  Mason remained at this
            institution for nearly twenty months.  The parties have agreed to settle Mason's claims for
21          $350,000.

22          These children's path to settlement has been long and complex.  They initially sued

23  _____

24  [4] On July 12, 2013, Plaintiffs filed their Second Amended Complaint ("SAC"), which is the
    operative complaint in the case.  Dkt. 178.  The Second Amended Complaint names Defendants
    working for the State of Nevada, Michael Willden and Amber Howell (the "State Defendants"),
25  and Defendants working for or responsible for the Clark County Department of Family Services:
    Clark County, Tom Morton, Virginia Valentine, Don Burnette, Lisa Ruiz-Lee, Yvette Chevalier,
26  Teresa Cragon, Darrel Ford, Debbie Mallwitz, Patricia Martin, Thor Martinez, Philomena
    Osemwengie, Stacey Scott, and Sonya Weathers (collectively "County Defendants").  It also
27  names Defendant Sylvia Clark, whom Plaintiffs voluntarily dismissed without prejudice on
    October 17, 2013.  Dkt. 245.

28

1  County and State Defendants, who filed a total of five motions to dismiss at three different stages,

2  along with multiple joinders and a motion for reconsideration.  After the Court granted the initial

3  motions to dismiss in October 2010, Plaintiffs appealed to the Ninth Circuit, which reversed in

4  part and remanded the case.  Based on the motion to dismiss rulings and the appeal, Plaintiffs

5  amended their complaint twice.[5]

6      The discovery that began in the summer of 2010 and re-commenced in the fall of 2012

7  was protracted and hard fought and filled with motion practice by Plaintiffs and Defendants.

8  Plaintiffs took nearly forty depositions, and County Defendants deposed all but one Plaintiff in

9  addition to taking six other depositions.  County Defendants produced over 120,000 pages of

10  documents that Plaintiffs' counsel organized and reviewed.  Declaration of Mark W. Danis, Dkt.

11  389, filed under seal in support of Plaintiffs' Petition and Memorandum in Support of Negotiated

12  Attorneys' Fees and Costs("Danis Decl.") ¶ 6.

13  The parties' extensive litigation efforts are demonstrated by the 400-plus docket entries in this

14  case to date.

15      As the case neared the close of discovery, Plaintiffs and Defendants engaged multiple

16  expert witnesses in the following fields: child welfare systems, child psychology, child

17  psychiatry, and life care planning.

18      On May 27, 2014, Magistrate Judge Leen convened the parties for a settlement

19  conference.  Dkt. 333.  After an all-day in-person meeting and follow-up conference call

20  discussions over a period of approximately one month, the parties reached agreement on

21  settlement amounts.  Declaration of Leecia Welch, Dkt. 390, filed in support of Plaintiffs'

22  Petition and Memorandum in Support of Negotiated Attorneys' Fees and Costs ("Welch Decl.")

23  ¶ 15.  County Defendants have agreed to pay a total of $1.575 million to the seven Plaintiffs who

24  remain in this case.  Petition at 2.  The settlement for the four minor Plaintiffs totals $925,000.

25

26  [5] During the course of the suit, Plaintiffs gradually exited foster care.  Of the thirteen original
Plaintiffs, each eventually was adopted, turned 18, or returned to his or her biological family.  In
27  light of this Court's rulings, Plaintiffs therefore lost their standing to seek injunctive relief and the
claims against State Defendants became moot.  Dkt. 247.

28

1   *Id.* The remaining amount—$650,000—represents the settlement amount for the three Plaintiffs

2   who were minors when they filed this suit but who have now reached the age of majority.[6] *Id.* at

3   3.

4   　The parties also reached a compromise on Plaintiffs' claim for attorneys' fees and costs

5   pursuant to 42 U.S.C. Section 1988. The parties have agreed to settle the claim for fees and costs

6   for a total of $500,000. Petition at 4. County Defendants have agreed to pay attorneys' fees and

7   costs directly; thus, no fees or costs will be deducted from the recovery of the Plaintiffs. *Id.*;

8   Welch Decl. ¶ 15.

9   　Following agreement on the basic terms of the settlement, Plaintiffs' counsel spent

10  substantial time over the next five months to bring the case to closure. Welch Decl. ¶ 16. The

11  unique circumstances of each Plaintiff, coupled with several being minors and the fact that they

12  live in three different states, necessitated a variety of different settlement structures. After several

13  months of negotiation and research as to viable financial alternatives, the parties agreed that the

14  four minor Plaintiffs will receive their settlement funds through one or more of: a special needs

15  trust, an annuity, and a blocked financial account. Welch Decl. ¶ 16. In addition to selecting

16  these settlement structures, the parties resolved numerous other issues before finalizing the

17  settlement terms. Welch Decl. ¶ 16.

18  　Given the resources expended over the course of nearly five years, the negotiated fee

19  amount is fair and reasonable. Indeed, the amount that Plaintiffs have agreed to accept represents

20  a reduction of more than 85 percent off Plaintiffs' lodestar claim. Further, the compromise is

21  intended to cover Plaintiffs' costs, in addition to their fees, and Plaintiffs' counsel have expended

22  more than $306,439.06 in costs and expenses litigating this case. Danis Decl. Ex. B, Welch Decl.

23  Ex. B, Declaration of Bruno Wolfenzon, Dkt. 391, filed in support of Plaintiffs' Petition and

24

25  [6] These adult Plaintiffs are Leo C., Victor C., and Linda E. *See* SAC ¶¶ 22-23. Although the
    approval of the settlement as to the adult Plaintiffs is not before the Court, the attorneys' fees and

26  costs compromise covers the work performed on behalf of these Plaintiffs as well. These
    Plaintiffs suffered alleged harms including alleged sexual and physical abuse during the four

27  years that Leo and Victor C. and six years that Linda E. spent in Clark County DFS custody. *Id.*
    at ¶¶ 22-23; 104(d), (f); 128(f)-(g); 151(a)-(e); 242-43; 255.

28

1  Memorandum in Support of Negotiated Attorneys' Fees and Costs ("Wolfenzon Decl.") Ex. B.

2  **III.    DISCUSSION**

3        **A.    Plaintiffs Are Entitled to Attorneys' Fees and Costs Under 42 U.S.C.
              Section 1988 and Under the Parties' Settlement Agreement.**

4

5        Pursuant to 42 U.S.C. Section 1988, courts have authority to award attorneys' fees in

6  actions brought under 42 U.S.C. Section 1983. The Ninth Circuit has interpreted this statute to

7  mean that "a court's discretion to deny fees under Section 1988 is very narrow and . . . fee awards

8  should be the rule rather than the exception." *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109,

9  1126 (9th Cir. 2008) (quoting *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989)).

10  This interpretation supports Congress's intent that Section 1988 "provide many victims of civil

11  rights violations with effective access to the judicial process." *See City of Riverside v. Rivera*,

12  477 U.S. 561, 576 (1986).

13        Through this settlement Plaintiffs are the prevailing party for purposes of recovering their

14  reasonable fees and costs. The parties entered into a settlement providing for payments to each

15  Plaintiff and for payment to Plaintiffs' counsel of an agreed amount for fees and costs under

16  Section 1988. Pursuant to the settlement agreement, payment of the negotiated fees and costs will

17  be made directly to Plaintiffs' counsel and will not be deducted from any individual Plaintiff's

18  settlement amount.

19        **B.    The Parties' Settlement Agreement Is Fair and Reasonable.**

20        Settlements involving minors require the court to play an oversight role "to determine

21  whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d

22  1177, 1181 (9th Cir. 2011) (citations omitted). The court's inquiry, however, should not

23  "place[]. . . undue emphasis on the amount of attorney's fees provided for in a settlement . . . ."

24  *Id.* The Ninth Circuit has clarified that when reviewing a settlement agreement involving minor

25  plaintiffs, "[m]ost importantly, the district court should evaluate the fairness of each minor

26  plaintiff's net recovery without regard to the proportion of the total settlement value designated

27

28

1  for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty

2  to safeguard." *Id.* at 1182 (citing *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)).[7]

3           In *Robidoux*, the Ninth Circuit reversed where the court below looked to state law in

4  reviewing the minors' settlement. 638 F.3d at 1182. The district court had rejected the proposed

5  settlement because it allowed for 56 percent of the total settlement to go toward attorney's fees

6  and the practice in state court was to award attorneys a maximum of 25 percent of the settlement.

7  *Id.* at 1179-80. In reversing, the Ninth Circuit held that "[s]o long as the net recovery to each

8  minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases,

9  the district court should approve the settlement as proposed by the parties." *Id.* at 1182.

10          Here, the net amounts to the minor Plaintiffs are fair and reasonable. Each will receive

11  between $100,000 and $350,000, with no deduction for attorneys' fees or costs. Petition at 3, 4.

12  These awards match or exceed settlements that courts have approved in other litigation where

13  foster children sued Clark County Department of Family Services for harms suffered while in

14  County custody. *See, e.g.*, Order on Petition for Compromise of Minors' Claims with Clark

15  County, 4, *Fullmer v. Brown*, No. 2:09-cv-01442-BES-PAL (D. Nev. Dec. 7, 2011) (approving

16  net awards of $20,000; $30,000; and $100,000 to minor plaintiffs); Order at 3, *Johnson v.*

17  *Clayton*, No. 2:08-cv-01810-RCJ-LRL (D. Nev. Dec. 28, 2010) (approving net awards of

18  $36,769.17 and $33,407.09 to the two minor plaintiffs); Order on Amended Petition to Approve

19  Compromise Settlement and Distribution at 4, *Mix v. Jones-Johnson*, No. 2:06-cv-411-RLH-LRL

20  (D. Nev. Aug. 19, 2009) (approving net awards of $11,500; $34,500; and two awards of $92,000

21  to the four minor plaintiffs).

22          Even if the Court were to look to the customary fee percentage taken from settlements of

23  minors in Nevada, the fee proposal here—less than 25 percent of the total settlement amount—is

24

25  [7] Although the *Robidoux* court was silent as to whether its holding applied to cases involving
    federal claims and pendant state law claims, numerous district courts have applied *Robidoux* in
26  such cases. *See, e.g.*, *Martinez v. City of Avondale*, No. CV-12-1837, 2014 U.S. Dist. LEXIS
    28941 (D. Ariz. Mar. 6, 2014); *Guerra v. Madera Mgmt. Co.*, No. 1:11-cv-01488, 2012 U.S. Dist.
27  LEXIS 132510 (E.D. Cal. Sept. 17, 2012); *Doe v. Gill*, No. C 11-5009, 2012 U.S. Dist. LEXIS
    74250, at *5-6 (N.D. Cal. May 29, 2012).

28

1   less than what courts have approved in other cases. Order at 2, *Johnson v. Clayton* (approving a

2   settlement where 33 percent of the total award is made as payment for attorneys' fees); Order at

3   6, *Mix v. Jones-Johnson* (approving settlement where 35 percent of the total award is designated

4   as attorneys' fees).

5         On November 21, 2014, Plaintiffs separately filed a petition for this Court's approval of

6   the minors' settlement. Plaintiffs outline below the reasonableness of the attorneys' fee

7   settlement in an effort to assist the Court's inquiry into whether the overall settlement agreement

8   is in the minors' best interests. For the reasons set forth below, there can be no question that the

9   fees and costs portion of the overall settlement is reasonable and should be approved along with

10   the petition to approve the minors' compromise.

11       C.    **The Fees and Costs Agreed to by the Parties Are Reasonable.**

12           1.    **Plaintiffs have agreed to settle for a significant reduction of their fee claim.**

13

14         The Supreme Court explained in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), that the

15   "most useful starting point for determining the amount of a reasonable fee is the number of hours

16   reasonably expended on the litigation multiplied by a reasonable hourly rate." This figure, the

17   "lodestar," is the presumptive reasonable fee. *Id.* at 433. Once the lodestar is reached, the court

18   may adjust it upward or downward based on the factors that the Ninth Circuit outlined in *Kerr v.*

19   *Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). *Fed. Deposit Ins. Corp. v. Lake*

20   *Elsinore 521, LLC*, No. 2:11-cv-00386-GMN-LRL, 2011 U.S. Dist. LEXIS 126866, **6-7

21   (D. Nev. Nov. 1, 2011) (explaining that "[c]alculation of reasonable attorney's fees is a two-step

22   process" consisting of first calculating the lodestar and second examining the award in light of the

23   *Kerr* factors); *see also* LR 54-16(b)(3).

24         Here, Plaintiffs have agreed to settle their claim for attorneys' fees and costs for a fraction

25   of the full amount to which their counsel are entitled based on the lodestar calculation. To

26   achieve the results in this case—obtaining payment of over $1.5 million to their clients—

27   Plaintiffs' counsel expended 17,480.20 hours of compensable time. Danis Decl. ¶ 12; Welch

28   Decl. ¶ 13; Wolfenzon Decl. ¶ 5. This equates to a lodestar of $3,355,260.50 at reasonable hourly

rates for the Las Vegas market. Danis Decl. ¶ 12; Welch Decl. ¶ 13; Wolfenzon Decl. ¶ 5. The fees and costs settlement also constitutes less than 25 percent of the total recovery in the case, far below what courts in Nevada have held to be reasonable percentages when taken as a contingency fee.[8] *See* § III(B), *supra.*

Complete time records and hourly rate information are attached as exhibits to the declarations in support of this Petition.[9]  A summary of Plaintiffs' counsel's hourly rates, hours worked, and total lodestar is as follows:

| Law Firm | Rate Range (NV) | Hours | Lodestar |
|---|---|---|---|
| Morrison & Foerster LLP | $100 - $250 | 12,273.00 | $2,391,422.50 |
| Nat'l Center for Youth Law | $100 – 250 | 5,163.60 | $956,861.00 |
| Wolfenzon Rolle | $75 – 185 | 43.60 | $6,977.00 |
| **TOTAL** | | **17,480.20** | **$3,355,260.50** |

For purposes of this case, Plaintiffs' counsel have calculated their lodestar using reasonable hourly rates charged for similar work in the Clark County legal market. These rates range from $200 per hour for a junior associate with 0-3 years of experience to $250 per hour for a senior partner. Wolfenzon Decl. ¶ 7; Declaration of Karie Wilson, Dkt. 392, filed under seal in support of Plaintiffs' Petition and Memorandum in Support of Negotiated Attorneys' Fees and Costs ("Wilson Decl.") ¶ 4. The Clark County rates that Plaintiffs use here are at or below rates that courts in the District of Nevada have approved in other cases. *See, e.g., Mendez v. Reinforcing Ironworkers Union Local 416*, No. 2:09-cv-02332-LRH-NJK, 2013 U.S. Dist.

---

[8] Plaintiffs' counsel have waived their right to receive any payment from the clients on a contingency basis, as provided for in the Plaintiffs' Retainer Agreements. Welch Decl. ¶ 18. These agreements permit Plaintiffs' counsel to receive 25 percent of the clients' recovery if the case settles pre-trial and counsel does not recover from the defendants at least 75 percent of its attorneys' fees and out-of-pocket expenses. *Id.* Plaintiffs' counsel will not, however, be taking any payment from the clients. *Id.*
[9] Plaintiffs attach detailed billing summaries for Morrison & Foerster LLP, the National Center for Youth Law, and Wolfenzon Rolle to the declarations filed in support of this petition. The complete bills are being provided in an unredacted form to aid the Court in its determinations concerning reasonableness. By providing the unredacted bills, Plaintiffs are not waiving any attorney-client or work-product privileges that attach to any work memorialized in the bills. The bills are being provided for the limited purpose of this attorneys' fees petition.

1   LEXIS 120893, **11-12 (D. Nev. Aug. 23, 2013) (awarding $415 per hour to an attorney with

2   16 years of experience); *Van Asdale v. Int'l Game, Tech.*, No. 3:04-cv-00703-RAM, 2011 U.S.

3   Dist. LEXIS 56715, *8-11 (D. Nev. May 24, 2011) (awarding $450 per hour for an attorney with

4   40 years of experience, $350 per hour for a 19-year attorney, and $120 per hour for paralegal

5   work).[10]

6           In arriving at their lodestar, Plaintiffs' counsel exercised billing judgment. Senior

7   attorneys have reviewed the time records from their respective firms to ensure that the services

8   for which time is submitted were reasonable and were actually and necessarily performed in the

9   prosecution of this case. Danis Decl. ¶ 10; Welch Decl. ¶ 11; Wolfenzon Decl. ¶ 5. For example,

10  Morrison & Foerster has written off in excess of $600,000 of time in an exercise of billing

11  judgment. Danis Decl. ¶ 9. The National Center for Youth Law similarly has not billed for time

12  spent by legal personnel who worked fewer than 30 hours on the case. Welch Decl. ¶ 11.

13  Morrison & Foerster has waived its claim to travel time and the National Center for Youth Law

14  has charged only half-time for travel. Danis Decl. ¶ 9; Welch Decl. ¶ 11. Local counsel Alverson

15  Taylor Mortensen & Sanders is waiving its right to recover fees. Wilson Decl. ¶ 3. The fees

16  presented in this Petition were reasonably and necessarily incurred in the course of this four-and-

17  a-half-year litigation, involving three rounds of motions to dismiss, significant additional motion

18  practice, and extensive fact and expert discovery. Danis Decl. ¶ 6; Welch Decl. ¶¶ 8-11;

19  Wolfenzon Decl. ¶¶ 4, 5; *see also* § II, *supra*.

20          **2.      The *Kerr* factors weigh in favor of approving this fee settlement.**

21          In *Kerr*, the Ninth Circuit enumerated twelve factors for courts to consider in determining

22  whether the lodestar should be adjusted in the course of awarding attorneys' fees. 526 F.2d at

23  70.[11] In this case, each of the *Kerr* factors weighs in favor of an *upward* adjustment of attorneys'

24

25  [10] If calculated using the prevailing market rates of the San Francisco Bay Area, where two of the
    firms practice, the lodestar is $8,840,747.50. At their local rates, Morrison & Foerster's lodestar

26  is $6,496,740.00, and the National Center for Youth Law's is $2,344,007.50. Danis Decl. ¶ 13;
    Welch Decl. ¶ 14. Thus, Plaintiffs' counsel will be taking a sizeable reduction off of the amount

27  they would charge to fee-paying clients.
    [11] These factors replicate those articulated in Local Rule 54-16(b)(3).

28

1  fees. Even so, rather than seeking an enhancement of their lodestar, Plaintiffs have taken a

2  significant reduction in the amount to which they are legally entitled, making approval of the

3  negotiated fee settlement all the more reasonable.

4      A.   The Results Obtained and the Amount Involved:  Plaintiffs in this case have settled

5  their claims for a total of $1.575 million, with each individual award ranging from $100,000 to

6  $350,000. Petition at 3.  The settlement amounts for the minor Plaintiffs substantially exceed

7  settlements in other litigation by former foster children against Clark County Department of

8  Family Services. *See* § III(B), *supra* (citing cases in which settlement awards to minors ranged

9  from $20,000 to $100,000).

10      Plaintiffs could not have achieved this result without significant expenditure of attorney

11  time and resources, as demonstrated by Plaintiffs' counsel's lodestar, which totals $3,355,260.50

12  at rates typically charged in the Clark County legal market.  § III(B)(1), *supra*.  Plaintiffs have

13  substantially achieved the goals of the lawsuit by winning significant monetary damages for the

14  harms they allegedly suffered while in foster care.[12]

15      B.   The Time and Labor Required:  Plaintiffs' counsel have worked over 17,000 hours

16  spanning more than a four-year period to achieve the results in this case.  Danis Decl. ¶ 12; Welch

17  Decl. ¶ 13; Wilson Decl. ¶ 3; Wolfenzon Decl. ¶¶ 4, 5.  Plaintiffs' counsel engaged in intensive

18  litigation activities, as demonstrated by the 400-plus docket entries to date.  Further, the fee award

19  the parties have negotiated is intended to cover Plaintiffs' significant litigation costs and out-of-

20  pocket expenses, which total $306,439.06.  § III(C)(3), *infra*.  These fees and costs were incurred

21  in the course of such activities as taking and defending roughly 50 depositions; hiring four experts

22  to review case files, interview Plaintiffs, and write expert reports; and engaging in extensive

23  motion practice during discovery proceedings.  *Id.*; § II, *supra*.

24

25  [12] Although Plaintiffs did not achieve complete relief because they were unable to obtain an injunction, a further reduction of their lodestar is not warranted because the parties' settlement takes into account the level of success achieved. This settlement recognizes that Plaintiffs have achieved excellent results. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee"). If any reduction of the lodestar is warranted, it is more than accounted for by the more than 85 percent reduction that the parties have negotiated.

28

C.    The Novelty and Difficulty of the Questions Involved: The Supreme Court has recognized that civil rights litigation brought under 42 U.S.C. Section 1983 constitutes "complex Federal litigation" on par with antitrust litigation. *Blum v. Stenson*, 465 U.S. 886, 893 (1984).  As Plaintiffs brought suit under Section 1983, they have met the prong of demonstrating that their lawsuit presents novel and difficult legal questions. *See* SAC ¶¶ 198-227, 276-281.

D.    The Skill Requisite To Perform the Legal Service Properly: This case required specialized skill spanning a variety of practice areas, ranging from litigation of federal civil rights suits, to expertise in child welfare systems, to expertise in personal injury and emotional trauma resulting from alleged abuse in foster care. The significant discovery in which the parties engaged required the ability to manage and examine tens of thousands of documents related to County Defendants' child welfare agency. Danis Decl. ¶ 6. Plaintiffs' counsel Morrison & Foerster contributed its expertise in complex federal litigation and in discovery management. Danis Decl. ¶ 2. The National Center for Youth Law additionally contributed its significant specialized knowledge of foster care systems and its expertise representing low-income children. Welch Decl. ¶¶ 2, 3, 9.

E.    The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case: Generally speaking, counsel's decision to litigate a case necessarily precludes work on other cases. *See, e.g., Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841, at *27 (D. Nev. Oct. 28, 2010).  That is particularly so in this case, where Plaintiffs' counsel expended over 17,000 hours over the course of more than four years—all time in which Plaintiffs' counsel were limited in their ability to accept other employment as a result of time devoted to this suit.

F.    The Customary Fee: As addressed in section III(C)(1), *supra*, Plaintiffs' counsel have calculated their lodestar based on the rates customary to lawyers of comparable skill and experience for similarly complex litigation.  At the rates customarily charged by attorneys practicing in Clark County, Plaintiffs through their fee settlement are accepting an award that is less than 15 percent of the amount which they could reasonably claim.  Measured in a different way, the fees compromise amounts to less than 25 percent of the total recovery at issue, and is

thus far less than the 33 and 35 percent contingency arrangements that courts in the District of
Nevada have approved as appropriate in other cases involving minors. *See* § III(C)(1), *supra*.

G.    Whether the Fee Is Fixed or Contingent: Plaintiffs' counsel's ability to obtain fees
was contingent on obtaining a successful outcome in this case. Plaintiffs are former foster
children and are generally indigent, and Plaintiffs' counsel advanced all the expenses of this
litigation. Danis Decl. ¶ 8; Welch Decl. ¶¶ 10, 18. Nevertheless, Plaintiffs are not asking for a
lodestar enhancement based on this factor and have in fact agreed to accept much less than their
full fees in the settlement of this case.

H.    The Time Limitations Imposed by the Client or the Circumstances: This case
imposed significant time limitations due to the pace of the litigation and the fact that most of
Plaintiffs' counsel had to travel from out of state in order to attend hearings or visit their clients.
Even after the parties agreed to the settlement in principle, the complexity of settling damages
claims involving large sums of money to Plaintiffs required an additional five months of research
and negotiations before the parties were prepared to sign the Settlement Agreement and Release.
Welch Decl. ¶ 16.

I.    The Experience, Reputation, and Ability of the Attorneys: The firms representing
Plaintiffs are well known and respected throughout the legal communities in which they practice.
*See* § III(C)(2)(D), *supra*. The two lead partners on the case from Morrison & Foerster have
more than 60 years of litigation experience combined. Danis Decl. ¶¶ 3, 4, Ex. A. The two lead
senior attorneys on this case from the National Center for Youth Law have nearly 60 years of
litigation experience combined, almost exclusively in the arena of child welfare litigation. Welch
Decl. ¶¶ 5, 7. They have successfully represented children in foster care in suits across the
country, including in Arkansas, Washington, and Utah. *Id.* Resumés for the primary attorneys on
this case for each firm are attached to the Declarations of Mark Danis (Ex. A) and Leecia Welch
(Ex. A).

J.    The Undesirability of the Case: For a number of reasons, this was an
"undesirable" case for Plaintiffs' counsel to undertake. The litigation was extremely time-
consuming, complex, and expensive. *See* §§ III(C)(2)(C), (D), *supra*; § III(C)(3), *infra*. The

1    transient nature of foster care placements presented additional logistical hurdles. Many of the

2    Plaintiffs moved multiple times, and all of the Plaintiffs exited foster care during the course of

3    this lawsuit. All of the minor Plaintiffs now live outside of Nevada, in three different states, and

4    Plaintiffs' counsel have had to navigate relevant laws in each of those states. Welch Decl. ¶ 16.

5    Finally, Plaintiffs' counsel undertook this litigation without any payment from clients and with

6    the knowledge that they might not recover their attorneys' fees or out-of-pocket expenditures.

7    Danis Decl. ¶ 14; Welch Decl. ¶¶ 10, 18.

8         K.    The Nature and Length of the Professional Relationship with the Clients:

9    Plaintiffs' counsel have long relationships with the Plaintiffs and/or with their Next Friends that

10   date back to 2009 or earlier. Welch Decl. ¶ 8. Plaintiffs' counsel have traveled to four different

11   states to visit the clients where they live. *Id.*¶ 9. Plaintiffs' counsel have developed close

12   relationships with each client, which is of special importance where the clients have been in foster

13   care and have often experienced much instability in their relationships with the adults in their

14   lives. *Id.* ¶¶ 8-9.

15        L.    Awards in Similar Cases: The negotiated attorneys' fee amount here is reasonable

16   in light of fee awards in similar cases. In other cases involving multi-year litigation where

17   children sue public agencies for damages under Section 1983 based on alleged child abuse and

18   neglect, courts have approved fee awards that far exceed the negotiated amount proposed here.

19   *See, e.g., Guerrero v. Brentwood Union Sch. Dist.*, No. 13-03873 LB, 2014 U.S. Dist. LEXIS

20   47167, at **13-14 (N.D. Cal. Apr. 4, 2014) (approving payment of at least $1.675 million in

21   attorneys' fees); Stipulation and Order Approving Payment of Counsel Fees and Costs and

22   Approving Final Distributions at ¶¶ 7-9, *K.J. v. Div. of Youth & Family Servs.*, No. 1:04-cv-

23   03553-JBR (D.N.J. Mar. 15, 2006) (approving payment of $1.35 million in attorneys' fees,

24   $72,389.90 in costs, and $24,550.84 in interest).

25

26

27

28

1        3.     **The fee settlement is reasonable in light of the substantial costs and out-of-pocket litigation expenses that Plaintiffs' counsel have expended.**

2

3        Since 2009, Plaintiffs' counsel have incurred significant costs and out-of-pocket litigation

4   expenses in the prosecution of this case. Danis Decl. ¶ 8; Welch Decl. ¶ 10. "Costs" include

5   those costs allowable under 28 U.S.C. Section 1920, as itemized in the Bill of Costs attached as

6   exhibits to the Declarations of Mark Danis, Leecia Welch, and Bruno Wolfenzon. "Out-of-

7   pocket litigation expenses" include those expenses that are ordinarily charged to fee-paying

8   clients and thus are recoverable as part of the overall attorneys' fees award. *Dang v. Cross*,

9   422 F.3d 800, 814 (9th Cir. 2005); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also*

10   *Woods v. Carey*, 722 F.3d 1177, 1179 n.1 (9th Cir. 2013) ("Expenses normally charged to fee-

11   paying clients include 'photocopying, paralegal expenses, and travel and telephone costs.'")

12   (quoting *Thornberry v. Delta Air Lines Inc.*, 676 F.2d 1240, 1244 (9th Cir.1982)).

13        In total, Plaintiffs' counsel have incurred $124,064.84 in costs, including photocopying

14   and hearing and deposition transcript charges, which are recoverable as a part of Plaintiffs' fees

15   and costs award. Additionally, Plaintiffs' counsel have incurred $182,374.22 in other out-of-

16   pocket litigation expenses that were necessary and reasonable for representation, including travel

17   for depositions and court appearances, long-distance telephone costs, postage, and expert fees.[13]

18   A summary of the expenditures is below.

19        Plaintiffs' counsel is not seeking separate reimbursement of these amounts, and out-of-

20   pocket litigation expenses and costs will be paid out of the negotiated fees and costs award.

21   Welch Decl.; Petition at 4.

22

23

24

25

[13] Plaintiffs' counsel have excluded from their calculation the following out-of-pocket

26   expenditures: Lexis/Westlaw research costs; secretarial overtime; word processing costs; and, for Morrison & Foerster, travel costs. Danis Decl. ¶ 8; Welch Decl. ¶ 11. Alverson Taylor

27   Mortensen & Sanders has also advanced costs and expenses for which it does not seek reimbursement. Wilson Decl. ¶ 3.

28

| Law Firm | Costs | Other Out-of-Pocket Litigation Expenses | TOTAL |
|---|---|---|---|
| Morrison & Foerster LLP | $123,413.09 | $141,968.97 | $265,382.06 |
| Nat'l Center for Youth Law | $346.00 | $40,217.18 | $40,563.18 |
| Wolfenzon Rolle | $305.75 | $188.07 | $493.82 |
| TOTAL | $124,064.84 | $182,374.22 | $306,439.06 |

## IV.   CONCLUSION

Plaintiffs have achieved significant results in this case, having reached a settlement of $1.575 million for the four children and three adult Plaintiffs.  To reach a complete settlement of the case, the parties agreed to a negotiated compromise of $500,000 in attorneys' fees and costs, which will not come out of Plaintiffs' recovery.  The amount that Plaintiffs' counsel will receive under the settlement agreement is fair and reasonable, and constitutes less than 25 percent of the total settlement.  For the reasons set forth above, Plaintiffs respectfully request that the Court approve the parties' negotiated compromise of attorneys' fees and costs, to be paid as described in the Settlement Agreement and Release.

Dated:  January 16, 2015          By:   /s/ Mark Danis
                                        Mark W. Danis
                                        *Attorneys for Plaintiffs*

                                        Jack Londen
                                        Mark W. Danis
                                        Aurora V. Kaiser
                                        Dinah X. Ortiz
                                        Sarah N. Davis
                                        MORRISON & FOERSTER LLP

                                        J. Bruce Alverson
                                        Karie N. Wilson
                                        ALVERSON TAYLOR MORTENSEN &
                                        SANDERS

                                        William Grimm
                                        Leecia Welch
                                        Erin Liotta
                                        NATIONAL CENTER FOR YOUTH LAW

/ / /

/ / /

1

2
Dated:  January 16, 2015          By    /s/ Jonathan Blum
3                                         Alan Lefebvre
                                          Jonathan D. Blum
4                                         KOLESAR & LEATHAM
                                          *Attorneys for Defendants Mallwitz*
5                                         *and Chevalier*

6

7
Dated:  January 16, 2015          By    /s/ Margaret Foley
8                                         Margaret G. Foley
                                          LEWIS BRISBOIS BISGAARD & SMITH LLP
9                                         *Attorneys for Clark County and Defendants Ruiz-*
                                          *Lee, Morton, Burnette, Valentine, Clark, Cragon,*
10                                        *Ford, Martin, Martinez, Osemwengie, Scott &*
                                          *Weathers*
11

12

13      ORDER

14
        IT IS SO ORDERED this 22nd day of January, 2015.
15

16

17

18      ROBERT C. JONES

19

20

21

22

23

24

25

26

27

28